## COMMONWEALTH vs. PLACIDO SANTIAGO.

Middlesex. March 5, 2002. - September 4, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Indecent Assault and Battery. Evidence,* Spontaneous utterance, Subsequent misconduct, Fresh complaint.

At the trial of an indictment charging indecent assault and battery on a child under the age of fourteen, the judge did not abuse her discretion in admitting in evidence, under the excited utterance exception to the hearsay rule, a statement by the mother of the victim, made to police as the mother's boy friend, the defendant, was being arrested, regarding what the defendant had told the mother earlier that day concerning his conduct, where the mother's observation of the defendant's arrest qualified as an exciting event; where the mother displayed a degree of excitement that was sufficient to conclude that her statement was a spontaneous reaction to the exciting event, rather than the product of reflective thought; and where the exciting event was of such a nature that it would likely have produced an utterance concerning the underlying event. [623-627] COWIN, J., dissenting.

At the trial of an indictment charging indecent assault and battery on a child under the age of fourteen, evidence of the defendant's uncharged bad acts toward the victim, committed eight years after the charges for which he was on trial, was properly admitted, accompanied as it was by careful limiting instructions, for the narrow purpose of showing the defendant's "sexual passion" for the victim; moreover, testimony from three fresh complaint witnesses did not constitute an impermissible "piling on" of such testimony. [627-628]

INDICTMENT found and returned in the Superior Court Department on April 15, 1998.

The case was tried before *Maria I. Lopez,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Rua M. Kelly,* Special Assistant District Attorney, for the Commonwealth.

*Ronald J. Ranta* for the defendant.

MARSHALL, C.J. On April 15, 1998, a grand jury returned two indictments charging the defendant with rape of a child under

the age of sixteen years in violation of G. L. c. 265, § 23, and indecent assault and battery on a child under the age of fourteen years, in violation of G. L. c. 265, § 13B. Both incidents were alleged to have occurred in December, 1990. A jury convicted the defendant of the indecent assault and battery, but acquitted him on the rape charge.

On appeal, the defendant claimed that a statement made by the victim's mother to the police at the time of his arrest in 1998 was improperly admitted as a spontaneous utterance. He also challenged other evidentiary rulings of the trial judge described below. The Appeals Court reversed his conviction, holding that the mother's statement was improperly admitted, and that its admission might have affected the outcome of the trial. *Commonwealth* v. *Santiago*, 52 Mass. App. Ct. 667, 678 (2001). We granted the Commonwealth's application for further appellate review. We now affirm the defendant's conviction.

*Facts.* The jury could have found that, in October, 1990, the victim, thirteen years old at the time, lived in Lawrence with her mother, her siblings, and her mother's boy friend — the defendant in this case. Around that time, the defendant sexually assaulted the victim by kissing her and touching her breasts. The victim immediately told her uncle, who lived upstairs. The uncle told the victim's mother and confronted the defendant, who thereupon moved out of the house. A short time later the victim's mother moved with her children, including the victim, to the defendant's new home in Lowell.

In the early morning hours of December 13, 1990, the victim awoke to find the defendant lying next to her. He placed his hand over her mouth, threatened to kill her if she screamed, and undressed her. The victim testified that the defendant touched her breasts and inserted his penis into her vagina, but "it didn't [go] all the way in." After the defendant left, the victim cried, spent the remainder of the night sleepless, and then showered and went to school.

That day, the victim told her school guidance counsellor about the previous night's assault. The guidance counsellor telephoned the victim's mother and the police. When they arrived at the school, the victim, speaking in Spanish, recounted the incident, with the guidance counsellor acting as her

translator. Accompanied by the guidance counsellor, the victim's mother took the victim to a hospital.

The defendant arrived at the hospital a short while later, while the victim was undergoing a medical examination. He agreed to speak to the police, with the guidance counsellor again serving as a translator. After receiving Miranda warnings in English and in Spanish, the defendant, who gave an assumed name, told the police that the victim had a long-standing "crush" on him and, the previous night, had asked him to come to her bedroom. He went, he said, to the doorway, but did not enter.

The police then arrested and handcuffed him. According to the trial testimony of an arresting officer and the guidance counsellor, as the defendant was being escorted from the hospital, the victim's mother, who had seen the defendant speaking with the police and had witnessed his arrest, ran over and, crying out in Spanish, said that the defendant had told her that he "went into [the victim's] bedroom and kissed her . . . only put his finger into her vagina, but did not have intercourse [with her]." The guidance counsellor translated the mother's statements for the police.

The defendant was booked at a police station (he again gave the police an assumed name) and was later released. The defendant did not return to court on December 27 as ordered, and a default warrant issued. He had fled the Commonwealth. In the ensuing years he lived in New York City and Connecticut using an assumed name. Eventually he married the victim's mother.

The victim, meanwhile, lived in a foster home for "a couple of days," and later with her maternal grandmother, who told her that the Massachusetts criminal case against the defendant had been dropped. The victim eventually moved to New York, married, and had two children. She later moved to Connecticut where she visited her mother and siblings, tolerating occasional contact with the defendant, she testified, to maintain her relationships with her family. In 1996, for financial reasons, the victim and her husband accepted her mother's offer to move to a separate apartment in her home, where the mother and the defendant lived.

The victim testified that during this period she had little contact with the defendant until an incident that occurred on January 8, 1998. On that day, the defendant knocked on the victim's apartment door when she was home alone. When she answered, he pushed his way in and professed his love for her, while touching her breasts, and trying to touch her genitals. He said he had always loved her and "didn't want" her mother any longer. The victim became angry, rebuffed him, and the defendant left. She and her husband reported the incident to the police. The defendant was arrested and, as he was taken into custody, said to the victim, in Spanish, "I will hurt you."

After the defendant's arrest, the victim inquired into the status of the 1990 assault. Her inquiry led to the discovery of the 1990 default warrant (which had issued in the defendant's assumed name), and the defendant was returned to Massachusetts to face trial.

*Spontaneous utterance.* The modern test for the admissibility of a statement as a spontaneous utterance in exception to the hearsay rule was laid down in *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 221-222 (1973). There the court explained that a statement is admissible if it is made "under certain external circumstances of physical shock . . . which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock." *Id.* at 222, quoting J. Wigmore, Evidence § 1747 (3d ed. 1940). Professor McCormick has stated this test succinctly: A spontaneous utterance will be admitted in evidence if (1) there is an occurrence or event "sufficiently startling to render inoperative the normal reflective thought processes of the observer," and (2) if the declarant's statement was "a spontaneous reaction to the occurrence or event and not the result of reflective thought." 2 McCormick, Evidence § 272, at 204 (5th ed. 1999). Justice Kaplan has recently explained the principle underlying the admissibility of spontaneous utterances: "[I]t is supposed that a person under stress tends to speak what comes spontaneously to mind, without energy or disposition to invent lies; his excited utterance is likely to be truthful in that sense, and so the hearsay objection is overcome." *Commonwealth* v.

*Carrasquillo*, 54 Mass. App. Ct. 363, 368 (2002), citing *Commonwealth* v. *McLaughlin, supra* at 222.

The defendant claims that the mother's comments to the police when he was arrested in 1990 do not meet this test. The Appeals Court agreed. While we concur with much of the reasoning of the Appeals Court on the question, we do not think that the decision of the judge was a "clear case[] . . . of an improper exercise of discretion" warranting reversal. *Commonwealth* v. *McLaughlin, supra* at 223, quoting J. Wigmore, *supra* at § 1750. The judge's decision was sound.[1]

We first consider whether there was an exciting event that would give rise to the exception. The Appeals Court assumed, correctly in our view, that the mother's observation of the defendant's arrest at the hospital so qualified. See *Commonwealth* v. *Santiago, supra* at 672, citing *Commonwealth* v. *Zagranski*, 408 Mass. 278, 286 (1990) (underlying exciting event was "the declarant's discovery of her handcuffed husband under arrest for murder in the kitchen of her home"), and *Commonwealth* v. *Lawson*, 46 Mass. App. Ct. 627, 630 (1999) (same).[2]

We next consider whether the declarant displayed a degree of excitement sufficient to conclude that her statement was a spontaneous reaction to the exciting event, rather than the

[1]The defendant raised the issue in a motion in limine and at trial, and the judge heard extensive argument before ultimately denying his motion. In short, as the Appeals Court noted, the judge's decision to admit the evidence was carefully considered. *Commonwealth* v. *Santiago*, 52 Mass. App. Ct. 667, 671 (2001).

[2]Other jurisdictions have also held that an arrest can serve as an exciting event. See, e.g., *Robinson* v. *State*, 730 N.E.2d 185, 194 (Ind. Ct. App. 2000) ("Here, undercover officers emerged from their cars to arrest [a codefendant], who fled from them on foot — undoubtedly a startling event"); *State* v. *Dalton*, 759 So. 2d 180, 183 (La. Ct. App. 2000) ("The defendant's husband was under the stress and excitement caused by his wife's arrest . . ."); *State* v. *Bonalumi*, 127 N.H. 485, 488 (1985) ("The startling event . . . was being called down to the police station late at night because her husband had just been picked up a second time for driving while intoxicated"); *Tezeno* v. *State*, 484 S.W.2d 374, 379 (Tex. Crim. App. 1972) ("Since the primary factor which makes such statements reliable is their spontaneous character, the fact that they relate to some occurrence other than the startling event itself, or its cause, should not make them less reliable. . . . The startling occurrence in this case was the arrest . . .").

product of reflective thought. By all accounts, the victim's mother reacted to the defendant's arrest and handcuffing with surprise, shock, and dismay. The arresting officer testified that the mother was "[v]ery, very upset and agitated," and was "more upset" when she made the remarks than she had been "at any point prior." She was speaking rapidly and loudly as she related to the police what the defendant had told her. The guidance counsellor testified that, as the mother called out to the police, "[she] was worr[ied] about [the defendant]." These are indicia that the victim's mother made the statement to the police in circumstances that reasonably negated premeditation. Here again, the Appeals Court concluded that this aspect of the test had been satisfied and, again, we agree. *Commonwealth* v. *Santiago, supra* at 672-673.

This should have been the end of the inquiry. See 2 McCormick, Evidence § 272, at 205-206 (5th ed. 1999) ("The courts look primarily to the effect upon the declarant, and if satisfied that the event was such as to cause adequate excitement, the inquiry is ended" [footnote omitted]). See also *State* v. *Bonalumi*, 127 N.H. 485, 488 (1985) (same). The Appeals Court, however, relying on *Blake* v. *Springfield St. Ry.*, 6 Mass. App. Ct. 553, 556 (1978), and other cases to the same effect,[3] went on to consider whether the statement "tended 'to qualify, characterize and explain the underlying event.' " *Commonwealth* v. *Santiago, supra* at 673, quoting *Commonwealth* v. *Crawford*, 417 Mass. 358, 362 (1994), *S.C.*, 430 Mass. 683 (2000). Those cases tend to suggest that there is a third aspect to the test of admissibility. To the contrary, the nexus between the statement and the event that produced it is but one of many factors to consider in determining whether the declarant was, in fact, under the sway of the exciting event when she made the statement. See, e.g., *Bayne* v. *State*, 98 Md. App. 149, 177 (1993) ("The relationship between the subsequent startling event, the excited utterance generated by it, the prior event about which the statement comments, and the time between

[3]*Commonwealth* v. *Marshall*, 434 Mass. 358, 363-364 (2001). *Commonwealth* v. *Crawford*, 417 Mass. 358, 362 (1994), *S.C.*, 430 Mass. 683 (2000). *Commonwealth* v. *Brown*, 413 Mass. 693, 695-696 (1992); *Commonwealth* v. *Fuller*, 399 Mass. 678, 683 (1987).

both startling events and the statement are all relevant, especially in regard to whether the utterance is made without reflection"). It illuminates the second aspect of the test; it is not an independent requirement, in the same respect that the lapse of time between the startling event and the declarant's statement is not an independent requirement.

In most cases, the nexus (if it exists) is a direct one, for the utterance describes an exciting event that is itself the subject matter of the case. See *Murphy Auto Parts Co.* v. *Ball*, 249 F.2d 508, 511-512 (D.C. Cir. 1957), cert. denied, 355 U.S. 932 (1958) ("Most often the excited utterance, as a practical matter, relates to the exciting cause, i.e., description of an accident, an attack . . ."). Where an exciting event is the stimulus for a statement about something other than that event, a concern arises that the declarant might be speaking from conscious reflection, and hence the statement's reliability is in doubt.

In this case the exciting event was an arrest, itself not at issue in this case of sexual assault. In cases, such as this, where the startling event elicits a statement concerning some prior event, a judge may examine the nexus between the startling event, the excited utterance generated by it, and the prior event about which the declarant comments to determine whether the statement was made without reflection. See *Bayne* v. *State, supra.* Cf. *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223 (1973) ("the admissibility of hearsay evidence under this exception relating to spontaneous utterances is not limited to utterances of a victim or participant in the event which is the subject of the utterances"). To ensure that the statement is not the product of conscious reflection, and therefore that it is sufficiently reliable that the declarant need not be called to testify to it, the relationship must be such that the occurrence of the subsequent event (here, the arrest) is likely to produce a nonreflective exclamation about the prior event (here, the defendant's statement to her).

While framed in different terms, in essence the Appeals Court concluded that the victim's mother was not sufficiently under the influence of the exciting event, the arrest, so as to be nonreflective when she made the statement about the defendant's earlier statement to her, and thus the mother's utterance was not

sufficiently spontaneous to negate premeditation or possible fabrication. We disagree. We have already described the degree of excitement displayed by the mother, and here there was a strong connection between the arrest and her statement; it was precipitated by the mother's perception that the arrest was unjustified because she thought the defendant had committed no crime. See *Commonwealth* v. *Zagranski*, 408 Mass. 278, 286 (1990) (remarks of defendant's wife "tended to characterize and explain her perception of the arrest. In her view, the arrest was unwarranted . . ."). Thus, there was a strong nexus between the arrest and the mother's excited utterance.

There was also a strong connection between the exciting event and the underlying event to which the statement related. The defendant's arrest in the hospital was for the very crimes for which he was facing trial in this case, and the mother's utterance, prompted by the arrest, concerned those crimes. In short, the exciting event was of such a nature that it would likely produce an utterance concerning the underlying event.[4] The judge was within her discretion to admit the statement.

*Other evidentiary challenges.* As a second claim of error, the defendant challenges the admission of testimony pertaining to the 1998 incident between the victim and the defendant. The Appeals Court concluded that the evidence was properly admitted, accompanied as it was by careful limiting instructions, for the narrow purpose of showing the defendant's "sexual passion" for the victim.[5] *Commonwealth* v. *Santiago*, 52 Mass. App. Ct. 667, 679, 680 (2001). We agree with both the reasoning and the conclusion of the Appeals Court.

---

[4]That aspect of the admissibility of the mother's statement was not the only hurdle to be overcome, for her statement to the police is a classic example of hearsay within hearsay (sometimes referred to as "totem pole hearsay"). See *Commonwealth* v. *McDonough*, 400 Mass. 639, 643 & n.8 (1987). The police officer's testimony to the statement made by the mother is admissible as a spontaneous utterance. The mother's statement, however, contained an out-of-court statement by the defendant. The defendant's statement in turn was properly admitted as an admission by the defendant. *Commonwealth* v. *Morgan*, 422 Mass. 373, 379 (1996), citing P.J. Liacos, Massachusetts Evidence § 8.1, at 463 (6th ed. 1994).

[5]The 1998 incident was also relevant to explain what might otherwise seem an inexplicable decision on the part of the victim to pursue the long-dormant 1990 charges. Absent some explanation, a jury could be skeptical of the victim's motives in resurrecting the case after an eight-year hiatus.

We are of the same opinion concerning the disposition of the defendant's third assignment of error — the admission of testimony from four witnesses, which the defendant characterizes as excessive "fresh complaint" evidence. In fact, the testimony of one of the four witnesses was admitted, not as fresh complaint evidence, but as evidence of a prior consistent statement. See *Commonwealth* v. *Santiago, supra* at 681. In any event, for the reasons stated by the Appeals Court, there was no impermissible "piling on" of the evidence by the other three witnesses. *Commonwealth* v. *Santiago, supra* at 681-682.

*Judgment affirmed.*

COWIN, J. (dissenting). While I do not differ with the court's identification of the factors that determine the admissibility of a statement under the spontaneous utterance exception to the hearsay rule, I do not agree with the way in which the court today applies these factors. I cannot join the court's opinion because it stretches the spontaneous utterance exception to the hearsay rule beyond its intended purpose. The statement by the victim's mother allegedly repeating the defendant's statement is the antithesis of a remark that speaks "what comes spontaneously to mind, without energy or disposition to invent lies." *Commonwealth* v. *Carrasquillo*, 54 Mass. App. Ct. 363, 368 (2002).

As the Appeals Court concluded, "the declarant had ample time, opportunity and motive to think about her boyfriend's situation and to contrive a story in an effort, however naive and ill-conceived, to exonerate him." *Commonwealth* v. *Santiago*, 52 Mass. App. Ct. 667, 675 (2001). The words of the statement itself, the effort of an ally of the defendant to protect him, have indicia of fabrication and contrivance that should be considered in determining its spontaneity. See 2 McCormick on Evidence § 272, at 208 (5th ed. 1999) ("Although not grounds for automatic exclusion, evidence that the statement was . . . self-serving is an indication that the statement was the result of reflective thought" [footnote omitted]). This is not an emotionally generated outcry but an attempt to explain the incident. It is

the declarant's repetition of a statement of another person and represents an intellectual judgment by the declarant that that statement is relevant and merits repeating. As the Appeals Court correctly determined, "in the circumstances, the statement simply does not exhibit the indicia of solid reliability that is both the hallmark of and the raison d'etre for the excited utterance exception to the hearsay rule." *Commonwealth* v. *Santiago, supra* at 676.

I share the Appeals Court's reluctance to challenge the trial judge's thoughtful decision as to admissibility, an issue on which she had broad discretion. But the admission of this statement exceeds the bounds of an exception that has already been extensively broadened. The judge did not give adequate weight to the obvious thought that had preceded the witness's statement. The admission of the statement as a spontaneous utterance constituted an abuse of discretion, and as the Appeals Court also concluded, I "cannot say with fair assurance that the jury's 'judgment was not substantially swayed by the error' . . . [and] that the judge's error in admitting the improper testimony was not prejudicial." *Id.* at 678, quoting *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). I would, therefore, reverse the conviction of indecent assault and battery on a child under fourteen years of age.