## COMMONWEALTH *vs.* JOHN WHITNEY.

No. 01-P-229.

Norfolk. September 20, 2004. - April 28, 2005.

Present: GELINAS, SMITH, & COWIN, JJ.

*Homicide. Practice, Criminal,* Required finding, Assistance of counsel, Instructions to jury, Hearsay. *Evidence,* Hearsay, Spontaneous utterance.

A Superior Court judge properly denied a criminal defendant's motion for a required finding of not guilty filed at the close of the Commonwealth's case at his murder trial, where the chain of circumstantial evidence was sufficient to convict the defendant. [352-356]

There was no merit to the defendant's contentions that his trial counsel failed to pursue available evidence regarding the police investigation that resulted in the defendant's arrest, failed to develop a third-party culprit defense, and failed to consult with the defendant or provide materials to him prior to trial. [356-357]

At a criminal trial, the defendant was not prejudiced by remarks the trial judge made to the jury in the course of their deliberations. [357-359]

Even if a certain out-of-court statement admitted at a murder trial was not properly admissible as a spontaneous utterance or on other grounds, the error in admitting it was harmless, where the statement was merely cumulative of other properly admitted evidence. [359-361]

INDICTMENT found and returned in the Superior Court Department on March 12, 1999.

The case was heard by *Thomas E. Connolly,* J., and a motion for a new trial, filed on May 22, 2001, was heard by him.

*Joseph F. Krowski* for the defendant.

*Varsha Kukafka,* Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant, charged with the murder of Alberto Portal (Alberto or victim), was convicted by a jury of murder in the second degree, and he appealed. He subsequently filed a motion for new trial, which was denied without appeal. He thereafter filed a second motion for new trial, which was also

denied, and on this occasion he appealed from the order of denial. The direct appeal and the appeal from the order denying the second motion for a new trial have been consolidated. The defendant asserts that (1) his motion for a required finding of not guilty filed at the close of the Commonwealth's case should have been allowed; (2) there was ineffective assistance of counsel in several respects; (3) he was prejudiced by inappropriate remarks by the trial judge in the course of jury deliberations; and (4) he was prejudiced by the use of an out-of-court statement by the victim's wife erroneously admitted as a spontaneous utterance. Discerning neither error on the part of the judge nor ineffective assistance of counsel, we affirm both the judgment of conviction and the order denying the defendant's second motion for new trial. We set forth the evidence in the course of the opinion.

1. *Sufficiency of the evidence.* Applying the principle that the evidence supporting conviction is sufficient if any rational juror could have found the essential elements of the crime beyond a reasonable doubt, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), we review the evidence that the jury could have credited. In early December, 1997, the defendant asked his friend, Thomas Pratt,[1] an acquaintance for more than twenty-five years, for a ride that evening. Pratt met the defendant in Natick at approximately 6:30 P.M., and they drove in Pratt's automobile for about forty minutes to the Hopedale-Mendon area.[2] They then continued to a restaurant in Milford, where they purchased food and ate in Pratt's car. The defendant stated that it was still too early to leave, and the men waited an additional one-half hour. They then left, driving on Route 109 in the direction of Millis and Franklin.

At one point, the defendant directed Pratt to leave Route 109 and drive up a hill. They continued driving for two to three miles, at which time the defendant told Pratt to stop. They had, by this time, arrived at a location approximately 200 to 300 feet away from the home of the victim, Alberto. The defendant got

---

[1]Pratt subsequently testified against the defendant under a grant of immunity.

[2]There was evidence that the men stopped at this point to purchase cocaine for their own use.

out of the car and instructed Pratt to meet him in one-half hour at the Sportsmen's Lounge in Millis. Pratt did as he was told and drove to the Sportsmen's Lounge.

Approximately one hour later, the defendant arrived at the lounge and stated that he had to drop a car off and needed Pratt to follow him in his automobile. The defendant, now driving the other automobile, headed down Route 109 toward Medfield, with Pratt following. To avoid a traffic jam caused by an accident on Route 109, the defendant, with Pratt continuing to follow, made a U-turn, left Route 109, and headed to Norwood on Route 1. He entered an Enterprise Rent-a-Car parking area, drove to the back of a building, and parked. He then got back into Pratt's car.

Pratt drove the defendant to the defendant's ex-wife's home. While the defendant seemed neither nervous nor upset, he spoke little during the ride. However, upon reaching his ex-wife's home, but before getting out of the car, he told Pratt that if anyone, especially the police, inquired, he (Pratt) should say that they had spent the night drinking at the American Legion Hall in Natick.

Both Alberto and a Chevy Lumina automobile registered in his name with license plate number 901-WOR were reported missing as of December 4, 1997. Approximately three months later, the Chevy Lumina registered to the victim was located by police in the Enterprise Rent-a-Car parking area. The victim's partially decomposed body was found in the trunk. It was subsequently determined that death had been caused by blunt head trauma approximately three months earlier. Pratt identified the spot at which the defendant had left the vehicle he had driven in early December. In addition, Pratt took the police to the area near the Portal home at which he had dropped off the defendant.

The victim had been employed by Consolidated Delivery & Logistics as a line haul driver operating between Massachusetts and Connecticut. His supervisor testified that he was never late for work. His regular shift began in Walpole at 10:00 P.M. and the drive from his home to the Walpole site took about twenty minutes. When he did not appear at work on the night of December 4, 1997, his employer's dispatcher telephoned the

Portal residence shortly after 11:00 P.M. and apparently awakened the victim's wife, Laura Portal (Laura). Told that Alberto had not reported to work, she stated that he had left the house at 9:30 P.M.[3]

The defendant had had a previous relationship with Laura resulting in the birth of a son. About two months before Alberto's disappearance, the defendant told a friend, Tammy Buffum, that he was seeing Laura more frequently. Buffum in fact accompanied the defendant to the victim's house in early December, 1997, so that he could visit his son and bring him a present. On the way to the house, the defendant informed Buffum that the victim had broken his son's arm. After the visit (during which Buffum remained in the car), he informed her that his son's arm was only sprained, but that the victim did not treat the boy well.

Following Alberto's disappearance, the defendant met or visited with Laura on several occasions, and spoke to her on the telephone regularly. On March 13, 1998, the defendant was arrested. As he was led from his home by police, he stated: "I'm not a murderer. I didn't dump no body. I just dropped a car off."

The above-described chain of circumstantial evidence was sufficient to convict. In arguing otherwise, the defendant relies on the proposition that evidence of a defendant's presence at a crime scene, motive, and consciousness of guilt is not enough, even in combination, to sustain a guilty verdict. See *Commonwealth* v. *Curtis*, 318 Mass. 584, 585-587 (1945); *Commonwealth* v. *Salemme*, 395 Mass. 594, 599-602 (1985); *Commonwealth* v. *Mazza*, 399 Mass. 395, 398-400 (1987). That proposition may well be true, but it is inapplicable here because there was considerable additional evidence as well. The jury were entitled to credit not only Pratt's testimony that he drove the defendant to a location within two to three hundred feet of the victim's house, but also the evidence that, on the night the victim was determined to be missing, the defendant left that area in a car matching the description of a vehicle subsequently identified as belonging to the victim; the defendant deposited

---

[3]The statement was admitted over objection as a spontaneous utterance. See section 4, *infra*.

the car at the Enterprise Rent-a-Car parking lot; and the car, with the victim's decomposing body in the trunk, was discovered in the same spot three months later. In addition, the jury could permissibly find that the defendant, with Pratt's unwitting assistance, timed his arrival at the victim's residence to coincide with the victim's routine of leaving for work at a particular hour. When motive (reconciliation with Laura; anger at the victim's treatment of his son) and consciousness of guilt (the defendant's spontaneous declaration to the police that he had just dropped a car off; his instruction to Pratt to lie about their activities on that day) are added, the evidence in its totality, evaluated in the light most favorable to the Commonwealth, satisfies the *Latimore* criteria.

The defendant's argument rests largely on what he maintains is an absence of evidence of guilt. This is not the calculus; it is the sufficiency of the evidence that is in fact introduced that is to be determined. Whether allegedly absent evidence detracts from evidence that is otherwise adequate to support a guilty verdict raises questions of credibility and weight that are for the jury to resolve. See *Commonwealth* v. *Martino*, 412 Mass. 267, 272-273 (1992). The absence of forensic evidence, particularly given the defendant's opportunity to dispose of blood or a weapon, does not alter the conclusion that other evidence was sufficient for a determination of guilt. The defendant's contention that there was no evidence of motive[4] or opportunity to commit the crime, and little, if any, evidence of consciousness of guilt, is simply wrong.

The defendant complains that there was a lack of evidence that he knew of the victim's routine of leaving his home about 9:30 P.M., and that accordingly it could not be inferred that he timed his arrival at the residence to coincide with the victim's departure. However, given the evidence of the victim's punctuality in leaving for work, and given the evidence that the defendant intentionally delayed leaving for the victim's residence on the night in question, the jury could permissibly infer that the defendant knew the victim's schedule, and that his timing was knowing and purposeful. Furthermore, in view of

[4]Motive is, in any event, not a necessary element of the crime of murder. See *Commonwealth* v. *Van Liew*, 14 Mass. App. Ct. 662, 668 (1982).

the defendant's relationship with Laura, he could well have obtained the information from her.

Finally, Pratt's uncertainty regarding the color of the victim's automobile and the date of the event created issues that the jury resolved adversely to the defendant. We note also that what the defendant characterizes as a Commonwealth "trick" to enter in evidence the date of December 4, 1997 (by means of putting the date in a question to Pratt) passed without objection by the defense. Having examined the defendant's various attacks on the evidence, we are left unpersuaded that a guilty verdict was not warranted.

2. *Ineffective assistance of counsel.* We evaluate the defendant's appellate claims of ineffective assistance of trial counsel on the basis of the standards, which we will not repeat, set forth in *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). In his second motion for new trial, the defendant accuses his trial counsel of failing to pursue available evidence that the police investigation that resulted in his arrest was inadequate, see *Commonwealth* v. *Bowden,* 379 Mass. 472, 485-486 (1980), specifically because the police investigator, Sergeant Palladini, allegedly had a romantic relationship with the victim's wife, Laura, a suspect herself. In a related argument, the defendant attacks counsel for failing to develop the possibility that Laura committed the murder, a so-called "third-party culprit" defense. In addition, he asserts that trial counsel failed to consult with him, or provide materials to him, prior to trial. The trial judge conducted a three-day evidentiary hearing on the motion, and thereafter rendered a six-page decision supporting his denial.

We pay special deference to a decision on a motion for new trial where the motion judge was also the trial judge. See *Commonwealth* v. *Myers,* 51 Mass. App. Ct. 627, 632 (2001). The judge apparently credited Sergeant Palladini's testimony that no relationship between Laura and himself existed. The evidence supports the finding. There were no writings by Sergeant Palladini to Laura. Letters obtained by the police from Laura were apparently either never sent or were ignored. That Sergeant Palladini was removed from the investigation as a result of Laura's allegations, and was subsequently suspended for five days for giving a statement exonerating Laura to a newspaper,

does not constitute evidence of a romantic relationship, or permit an inference that Sergeant Palladini thwarted or prejudiced an investigation that would otherwise have pointed away from the defendant.

As the judge indicated, there seems little to recommend a strategy whereby the jury's attention would be focused on Laura as the killer. In the circumstances, an attempt to identify Laura as the perpetrator would almost certainly have implicated the defendant as a joint venturer. That defense counsel did not pursue an extremely high-risk course does not make out a case of ineffective assistance. See *Commonwealth* v. *Alammani*, 439 Mass. 605, 613 (2003) (if basis of ineffective assistance claim is tactical error, defendant must demonstrate that tactical judgment was manifestly unreasonable). Furthermore, a more likely line of defense chosen by counsel, i.e., that there was computerized evidence that the Chevy Lumina in which the victim's body was found had been seen in a location other than the Enterprise Rent-a-Car parking lot during the three months that elapsed between the victim's disappearance and the discovery of the body, depended on expert testimony regarding the computerized evidence that was to be provided by Sergeant Palladini. It follows that the defendant would hardly have been helped by evidence that challenged his expert witness's credibility.

With respect to contact, or lack thereof, between trial counsel and the defendant, the judge credited counsel's testimony that he supplied police reports, grand jury minutes, and other documents to the defendant, and that he discussed with the defendant every trial strategy. We accept the motion judge's findings of fact absent clear error. See *Commonwealth* v. *Smiley*, 431 Mass. 477, 481 (2000). We agree with the judge that the defendant was convicted by the evidence, not by reason of ineffective assistance of counsel.

3. *Challenged jury instruction.* We address briefly the defendant's objection to remarks by the judge to the jury in the course of jury deliberations. At the commencement of the fourth day of deliberations, the judge stated:

"Common sense, just briefly, folks, is something that

you don't get by getting three Ph.D.s and become this and become that. That's something we learn from the day that we're born from our mother and father, and as we go through life. A person could have twenty Ph.D.s, a Phi Beta Kappa or whatever, and not have an ounce of it, and a person who went to the second grade, or was an immigrant can be chuck loaded with it."

The defendant objected unsuccessfully and subsequently moved for a mistrial. That motion was denied. Two hours after the statement at issue, the jury returned a verdict of murder in the second degree.

The defendant argues that the statement had a coercive effect on the jury, see *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 98 (1973); *Commonwealth* v. *Connors*, 13 Mass. App. Ct. 1005, 1006 (1982), particularly given that two members of the jury were in fact holders of Ph.D. degrees. Put differently, he contends that the remarks invited the jury to discount the views of those individuals. In further support of his position, he observes that the return of a verdict a scant two hours after the statement (following three previous days of deliberation without a verdict) indicated that the remarks indeed influenced the jury in favor of a finding of guilt.[5]

The defendant's proposition is premised on an eccentric reading of the judge's statement. Nothing in his remarks suggests an equation between higher education and lack of common sense. The statement was plainly calculated to remind the jurors that they should evaluate the evidence in the light of their own common sense and life experiences, see *Commonwealth* v. *Mutina*, 366 Mass. 810, 820 (1975), and that common sense was not necessarily a function of education. The statement would not have been misconstrued by a rational juror. That the jury returned a verdict two hours after the statement is irrelevant.

---

[5]At a hearing on the defendant's motion for a mistrial, defense counsel referred to a previous "problem" with one of the jurors who held a Ph.D. degree, apparently implying that that juror might have been a "hold out" for acquittal. The judge correctly observed that there was no basis for drawing any conclusion regarding any juror's views. The argument has, for good reason, been abandoned on appeal. In any event, we note that any inferential denigration of people with advanced degrees would hardly be likely to influence the votes of those who were the subject of the comment.

The amount of time that elapses between a judge's remarks and a verdict does not, by itself, support a conclusion that the remarks were coercive. See *Commonwealth* v. *Moore*, 359 Mass. 509, 516 (1971).

4. *Spontaneous utterance.* The judge admitted, under the spontaneous utterance exception to the hearsay rule, testimony of the dispatcher, Vernon Dunbar, that he called the Portal residence a little after 11:00 P.M. on December 4, 1997; spoke to Laura who, he believed, had been sleeping; and informed her that Alberto had not arrived at work. To this, Laura replied that Alberto had left home at 9:30 P.M. The defendant initially challenges the admission of Laura's statement on the ground that the judge abused his discretion in the circumstances, because Laura's statement did not qualify as a spontaneous utterance. We disagree.

The trial judge has considerable discretion in deciding on the admissibility of statements on a spontaneous utterance exception. See *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223-224 (1973); *Commonwealth* v. *Mendrala*, 20 Mass. App. Ct. 398, 401 (1985). A spontaneous utterance is one that responds to an occurrence or event that is "sufficiently startling to render inoperative the normal reflective thought processes of the observer," producing "a spontaneous reaction to the occurrence or event [which is] not the result of reflective thought." *Commonwealth* v. *Santiago*, 437 Mass. 620, 623 (2002), quoting 2 McCormick, Evidence § 272, at 204 (5th ed. 1999). Whether the statement tended to "qualify, characterize and explain the underlying event," *Commonwealth* v. *Crawford*, 417 Mass. 358, 362 (1994), is not an independent foundational element, but merely one of many factors to be considered in assessing whether the statement was truly made without reflection, including the various relationships among the startling event, the utterance generated by it, the prior event about which the statement comments, and the time between the startling event and the statement. See *Commonwealth* v. *Santiago*, *supra* at 625-626.

Here, the dispatcher's telephone call after 11:00 P.M. announcing that Laura's husband, known for his punctuality in arriving at work, had not appeared for his scheduled shift could

be found to be a startling event that could trigger a spontaneous response. That the response was in fact spontaneous is supported by the dispatcher's testimony that it appeared that Laura had been awakened by the call, and that she sounded worried and concerned at being informed that her husband had not shown up at the regular time. If, as the defendant argues, Laura had a motive to lie, the credibility of the utterance was for the jury to determine. See *Commonwealth* v. *Moquette*, 439 Mass. 697, 706 (2003). "[A] victim's motive or lack thereof should play no part in the calculus of determining admissibility of the statements." *Commonwealth* v. *Joyner*, 55 Mass. App. Ct. 412, 416 (2002). Taking all relevant factors into account, the judge could permissibly deem Dunbar's testimony repeating Laura's statement admissible.

Following the filing of the Commonwealth's brief in this court, the Supreme Court decided *Crawford* v. *Washington*, 541 U.S. 36 (2004). In a reply brief, the defendant argues that the admission of Laura's out-of-court statement violated the principle, enunciated in *Crawford*, that the confrontation clause of the Sixth Amendment to the United States Constitution prohibits, at least in criminal cases, the use of out-of-court "testimonial statements" unless the declarant is unavailable and there has been opportunity for cross-examination of the declarant with respect to the proffered statements. *Id.* at 59-64. The Supreme Court majority passed on the question of what constitutes a testimonial statement for this purpose. *Id.* at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial' ").

We leave the ambiguities of *Crawford* v. *Washington*, *supra*, to clarification by others, for we resolve the issue in this case on a narrower ground. Even were Laura's out-of-court statement inadmissible, either because it was not a spontaneous utterance or because it violated the holding of *Crawford*, the error in admitting it was harmless. Despite *Crawford*'s constitutional strictures, improper admission of statements apparently remains subject to harmless-error analysis. *Id.* at 76 (Rehnquist, C.J., concurring). That being so, we apply our traditional rule that the erroneous admission of hearsay does not require reversal where the hearsay is merely cumulative of other properly admit-

ted evidence. See *Commonwealth* v. *O'Connor*, 407 Mass. 663, 670 (1990); *Commonwealth* v. *Dunn*, 56 Mass. App. Ct. 89, 94-95 (2002). Here, there was other evidence that the victim regularly reported for work at 10:00 P.M., took about twenty minutes to drive to work, and was uncommonly punctual. The jury could permissibly infer without Laura's statement that Alberto left his residence at approximately 9:30 P.M. on the night in question.

*Judgment affirmed.*

*Order denying second motion for new trial affirmed.*