## COMMONWEALTH *vs.* JAMES REED.

Middlesex. April 6, 2005. - August 3, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Discovery, Subpoena. *Evidence,* Exculpatory, Medical record, Curative admissibility, Spontaneous utterance.

The criminal defendant, in making a pretrial motion for a summons pursuant to Mass. R. Crim. P. 17 (a) (2) for records from a third party, demonstrated a sufficient basis to require the production of certain medical records of the complainant as likely to be admissible at trial and as having a rational tendency to prove an issue in the case. [806-809]

At the trial of indictments charging rape of a child and indecent assault and battery on a child, the judge should have admitted in evidence, under the doctrine of curative admissibility, testimony concerning a criminal defendant's denial of an out-of-court accusation made in his presence, which accusation had been admitted in evidence [809-811], and this error, combined with the denial to the defendant of access to certain medical records of the complainant, deprived the defendant of the opportunity to develop his defense fully and warranted a new trial [812].

At a criminal trial, the judge would have been warranted in concluding that certain evidence as presented did not qualify as a spontaneous utterance. [811-812]

INDICTMENTS found and returned in the Superior Court Department on May 17, 2001.

A pretrial motion for discovery was heard by *S. Jane Haggerty,* J., and the cases were tried before *Janet L. Sanders,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Brownlow M. Speer,* Committee For Public Counsel Services, for the defendant.

*Loretta M. Smith,* Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. A jury convicted the defendant on two indictments charging rape of a child and two indictments charging indecent assault and battery on a child. The complainant was

his younger daughter, thirteen years of age at the time of the incident. The defendant appealed, claiming that a judge in the Superior Court who ruled on certain pretrial motions erroneously had barred him access to potentially exculpatory evidence. He also claims that the judge who presided at his trial erroneously prevented him from presenting evidence tending to show his innocence. We granted the defendant's application for direct appellate review. We reverse the judgments, set aside the defendant's convictions and remand the case to the Superior Court for further proceedings consistent with this opinion.

1. *Background.* We first summarize the evidence at trial, leaving for later discussion particular facts concerning the defendant's appellate claims.

The defendant is a divorced father of four children. He lived with his parents (the children's grandparents) and his older daughter, Alison,[1] who was twenty years of age at the time of trial. The defendant's three other children, Benjamin, seventeen years old at the time of the alleged incident, and Eric and Ellen, twins, thirteen years old at the time of the alleged incident, lived primarily with their mother, but stayed with the defendant and their grandparents every other weekend.

On Saturday, March 3, 2001, the defendant and his four children attended a party to celebrate the grandparents' fiftieth wedding anniversary. On returning home, the defendant, Benjamin, Eric, and Ellen all went upstairs. Approximately one-half hour later, Ellen came downstairs, telling her grandparents that the defendant had "tried to rape" her, but that she had "punched him in the eye" and run away. The grandfather went upstairs to confront the defendant with the child's accusation.

Ellen testified that the defendant had found her lying fully clothed on Alison's bed, in a bedroom where Ellen often slept. She testified that the defendant "unzipped his pants[,] moved [her] underwear over," and placed the tip of his penis into her vagina. She then "flipped him over onto his back," she said, punched him in the eye, and ran downstairs.[2]

The defendant testified to a quite different set of events. He

---

[1]We identify each of the children by a pseudonym.

[2]At trial, Ellen also testified that the defendant began to behave inappropriately toward her when she was between ten and twelve years old, when,

said that he was in the bathroom at the time of the alleged assault and emerged only to have Ellen punch him in the eye for no apparent reason.[3] No witness could corroborate either account of what transpired on the night of March 3. However, there was testimony by her siblings and her grandmother tending to contradict certain of Ellen's claims. The next morning the defendant informed the police of Ellen's accusations against him, and he consistently has denied any inappropriate behavior toward Ellen that evening, or at any other time.

There was testimony from several witnesses that Ellen was a very emotional child who had difficulty interacting with other members of her family. Her grandmother attempted to take Ellen to a hospital emergency room immediately after her accusation of rape; Ellen refused to go. Shortly thereafter, Ellen returned to her mother's home. The following morning, her mother took Ellen to a hospital, where Ellen repeated her accusation against her father and was examined by a doctor and a nurse. The examination uncovered no physical evidence connected to the defendant, but during a pelvic examination, the nurse noticed that Ellen's vaginal wall was "redder than the normal," a condition known as erythema. Ellen's statements to her mother and the nurse were admitted as fresh complaint evidence. These were largely consistent with Ellen's own testimony.

A gynecologist called as an expert for the defense testified that erythema of the type observed by the nurse was a "common" condition not "specific to a trauma of the vagina." On cross-examination, the doctor did testify that erythema, while a "non-specific finding," "could" result from sexual assault. In closing argument, the prosecutor characterized the nurse's observation as "abnormal findings of [Ellen's] vagina . . .

according to her testimony, she would often sleep in his bedroom, along with her two brothers. At first, she testified, the defendant touched her breasts and rubbed his clothed groin against hers. Later, she said, the defendant rubbed her genitals with his hand. Ellen alleged that shortly before the date of the alleged rape, the defendant digitally raped her on two or three separate occasions.

[3]There was testimony that, on returning home from the fiftieth wedding anniversary party, Ellen became very angry and upset when her grandmother refused to let her use the computer because it was too late in the evening.

abnormal redness of the vagina," and argued that the finding of erythema in her vagina "can" mean "trauma from a sexual assault" and was "corroboration for what [Ellen] told you."

2. *Discussion.* On appeal, the defendant does not challenge the evidence admitted at trial. Rather, he contends that the jury were not permitted to consider other admissible evidence that pointed to his innocence. We consider each of his claims in turn, and conclude that they are meritorious.

a. *Pretrial discovery.* The defendant's first claim concerns a matter of pretrial discovery. Shortly after the defendant was indicted, defense counsel learned that the Commonwealth intended to introduce evidence gleaned from the complainant's March 4, 2001, pelvic examination. Defense counsel later learned that Ellen had undergone a previous pelvic examination less than six weeks earlier, on January 22, 2001, also following an allegation that she had been sexually assaulted, this time while at school.[4] The defendant moved for "the production of the medical records pertaining to a pelvic examination of [Ellen] on January 22, 2001." Counsel did not know any specifics concerning the examination. In a separate written motion, he requested an order "direct[ing] the Commonwealth to obtain and provide the name and address of [the] doctor who conducted a pelvic exam on [Ellen] on January 22, 2001[,] as a result of an alleged sexual assault at her school." A Superior Court judge held a nonevidentiary hearing on the motions, during which defense counsel stated that he sought the results of the January examination in order to allow a defense expert to assess the probative value of Ellen's erythema identified during her second pelvic examination on March 4, and could be "important in terms of any physical feature, characteristic, or condition of the alleged victim . . . ." The judge denied the motions, ruling that

---

[4]Defense counsel learned of the previous examination while reading a file compiled by the Department of Social Services. The examination had taken place some ten or more days after Ellen had alleged that she had been sexually assaulted at school. The file produced to the defendant and reproduced in the record provides no information as to the circumstances of the alleged sexual assault at school. It contains only the social worker's report of her investigation into the reason for the mother's delay in taking Ellen to see a doctor after Ellen had complained of being sexually assaulted at school.

defense counsel had failed to demonstrate a sufficient basis to require production.[5]

The defendant and the Commonwealth both recognize that the defendant's motion for "the production of the medical records" was a motion for a summons for records from a third party, governed by Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979). See *Commonwealth* v. *Lampron*, 441 Mass. 265, 268 (2004) ("Regardless of how a defendant styles his request, pursuit of documents and records in the possession of a nonparty must be considered and analyzed under rule 17 [a] [2] . . ."). For reasons we now explain, we conclude that the defendant made a sufficient showing for the issuance of a summons.

A party moving to subpoena (summons) documents to be produced before trial "must establish good cause, satisfied by a showing '(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application [was] made in good faith and [was] not intended as a general "fishing expedition." ' " *Commonwealth* v. *Lampron*, *supra* at 269, quoting *United States* v. *Nixon*, 418 U.S. 683, 699-700 (1974). In this case the Commonwealth challenges in substantial measure only whether the defendant has satisfied the first of the four prongs. Our inquiry therefore is whether the

---

[5]It is unclear from the record whether at the time of the hearing the Commonwealth knew the name of the doctor who had examined Ellen in January, 2001. The record does not provide sufficient details for us to determine whether the defendant's second motion should have been allowed under a narrow exception to the general rule that a defendant may not require a prosecutor to pose questions to government witnesses on behalf of the defense. See *Commonwealth* v. *Beal*, 429 Mass. 530, 534-535 & n.4 (1999) (prosecutor's intentional avoidance of potentially exculpatory evidence constitutes "a serious breach of professional ethics"). We need not address the point because, as the defendant notes on appeal, an inquiry or, if necessary, a summons pursuant to Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979), to the Department of Social Services could have produced records containing the name of the doctor who examined Ellen in January, 2001. The department's file included a notation by the social worker that she had contacted the doctor with whom the mother had scheduled the January pelvic examination for Ellen.

defendant has shown that records pertaining to the complainant's January pelvic examination are "likely to be admissible at hearing or at trial," *Commonwealth* v. *Lampron, supra,* citing *Bowman Dairy Co.* v. *United States,* 341 U.S. 214 (1951), and have a "rational tendency to prove [or disprove] an issue in the case," *Commonwealth* v. *Lampron, supra* at 269-270, quoting *Commonwealth* v. *Fayerweather,* 406 Mass. 178, 183 (1989). See *Commonwealth* v. *Lam, ante* 224, 230 (2005), and cases cited. The Commonwealth does not question the admissibility of medical records but argues that defendant failed to show that the records meet the threshold of relevance.

Here, the records of Ellen's January pelvic examination bore on a critical fact in the defendant's case: whether the erythema described by the nurse in March was corroborative of Ellen's allegations against her father. If Ellen's earlier pelvic examination had revealed erythema similar to (or more serious than) the erythema noted by the nurse in March, the Commonwealth's theory that the March results were probative of sexual assault may have been significantly undercut. The prosecutor, for example, might not have been able to argue that Ellen's vaginal condition on the morning after the alleged rape was "abnormal" for Ellen.[6] A defendant is not required to state with certainty the precise manner in which a medical record would be employed at trial. When a party cannot know for certain the contents of a requested document, it is appropriate for a court to order the issuance of a summons pursuant to rule 17 (a) (2) on a showing of the relevance of what the document is likely to contain. See *United States* v. *Nixon, supra* at 700.[7] The January records likely would have given the jury a more comprehensive and fairer picture as to the significance of the March records to be

---

[6]We cannot ascertain from the record whether Ellen's earlier accusations of a sexual assault at school led to a prosecution and whether her claims were truthful. A complainant's previous false allegations of sexual assault may in certain cases be admissible when the veracity of a complainant's later allegation of sexual assault is questioned. See *Commonwealth* v. *Fuller,* 423 Mass. 216, 226 (1996); *Commonwealth* v. *Sperrazza,* 379 Mass. 166, 169 (1979); *Commonwealth* v. *Bohannon,* 376 Mass. 90, 94-96 (1978), *S.C.,* 385 Mass. 733 (1982).

[7]Neither defense counsel nor the motion judge had the benefit of our decision in *Commonwealth* v. *Lampron,* 441 Mass. 265 (2004). An affidavit from an expert attesting to the importance of certain records in his evaluation of a

introduced by the Commonwealth. A summons was appropriate. See *Commonwealth* v. *Mitchell, ante* 786, 795 (2005) ("A defendant has an unquestioned right . . . to obtain relevant evidence that bears on the question of his guilt or innocence or which otherwise will help his defense").

b. *Evidence excluded at trial.* The defendant next challenges an evidentiary ruling at trial. During its case-in-chief, the Commonwealth elicited testimony from a police officer that shortly after Ellen accused her father, her grandfather went upstairs to confront the defendant. The grounds for admission of this evidence are unclear, but no objection was made. Later in the trial, defense counsel called the grandfather as a witness and he testified to similar effect that, on hearing Ellen's accusations, he went upstairs to confront his son and found the defendant "in the bathroom checking his eye." He then testified:

> "I banged on the door and I told him I wanted to talk to him. And I went into my bedroom. And he came out, and he came in, and I told him what [Ellen] had said and the look on his face was complete bewilderment. . . . He didn't realize what I was saying until I had to repeat myself."

If permitted, the grandfather would have testified further that the defendant promptly and strongly denied Ellen's accusations. The judge, however, on the Commonwealth's objection, excluded the testimony, pointing to the hearsay rule. Defense counsel challenged the ruling on the ground that the defendant's statement qualified as a spontaneous utterance, which the judge rejected.

On appeal the defendant now contends that his denial should have been admitted through the doctrine of "curative admissibility." See *Commonwealth* v. *Ruffen*, 399 Mass. 811, 812-814 (1987). In the alternative, he argues that the judge abused her discretion in ruling that his denial to his father did not qualify as a spontaneous utterance. As we shall explain, we cannot conclude that the judge abused her discretion on the spontaneous utterance claim, but we agree with the defendant

medical record may be useful in determining the relevance of records for purposes of rule 17 (a) (2).

that the defendant's denial should have been admitted under the doctrine of curative admissibility. Because the admission of the grandfather's testimony was not sought on this basis, we review the judge's decision to determine whether it created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

We consider first the applicability of the doctrine of curative admissibility to this case. In *Commonwealth* v. *Ruffen*, *supra*, a judge erroneously, although without apparent objection, admitted in evidence the complainant's face-to-face accusation of the defendant, which was made in the presence of a police officer. The judge then precluded the defendant from asking the police officer to testify concerning the defendant's prompt denial of the accusation when confronted. *Id.* at 812. We held that, because the "jury heard the officer testify that the victim made an accusation by relating her story in front of the defendant . . . the defendant should have been allowed, under the doctrine of curative admissibility, to present testimony that he denied the accusations." *Id.* at 813.

The circumstances are the same here. Evidence of the grandfather's out-of-court accusation of the defendant made in his presence should not have been admitted. See *Commonwealth* v. *Ruffen*, *supra* at 813; *Commonwealth* v. *Cruz*, 373 Mass. 676, 691 (1977) ("accusatory questions followed by unequivocal denials are to be excluded from evidence"); *Commonwealth* v. *Locke*, 335 Mass. 106, 115 (1956) ("It is settled that extrajudicial accusatory statements made in the presence of a defendant are not admissible as evidence against him where the defendant has denied the accusations"). We do not fault the judge on that point, because the defendant did not object to or move to strike the testimony. But once the jury heard the police officer's testimony that the grandfather had accused the defendant, the judge should have allowed in evidence the defendant's unequivocal denial, minimizing, as much as possible, the prejudice to the defendant of the earlier testimony. *Commonwealth* v. *Ruffen*, *supra* at 813-814.

In *Commonwealth* v. *Ruffen*, *supra*, we noted that the doctrine of curative admissibility may only be invoked "if the original evidence created significant prejudice." *Id.* at 814. The Com-

monwealth argues that this is not such a case. The clear import of the *Ruffen* case, however, is that a defendant almost always suffers significant prejudice when he is unable to counter evidence of an out-of-court accusation made in his presence with evidence from a third party that the defendant promptly and completely denied the accusation. See *Commonwealth* v. *Cruz, supra* at 692. This case provides no exception to the general rule.

Other evidence elicited by the Commonwealth that, on the night of the incident, the defendant could be seen crying himself to sleep compounded the error. Without any information from the grandfather that the defendant had immediately denied his daughter's accusations, the jury could well have concluded that the defendant was showing remorse after having been caught in the commission of a crime. See *Commonwealth* v. *Keyes*, 11 Gray 323, 324 (1858) ("whenever the statements, declarations or admissions of a party are made subjects of proof, all that was said by him at the same time and upon the same subject is admissible in his favor"). It was not sufficient for the judge to allow, as she did, the defendant himself to testify that he had denied the grandfather's accusatory statement.[8] See *Commonwealth* v. *Britland*, 300 Mass. 492, 496 (1938) ("Evidence of statements favorable to the defendant . . . coming from the defendant alone . . . might be viewed with the suspicion that they were of later invention").

Because we conclude that the testimony should have been admitted under the doctrine of curative admissibility, we comment only briefly on the judge's ruling on the spontaneous utterance exception to the hearsay rule. The test for admissibility under that exception has two prongs, both of which must be met for a statement to be admitted. First, a judge must determine whether the statement was triggered by an "event 'sufficiently startling to render inoperative the normal reflective thought processes of the observer.' " *Commonwealth* v. *Santiago*, 437

---

[8]The Commonwealth suggests that any prejudice to the defendant as a result of the judge's ruling prohibiting the grandfather from testifying about the defendant's prompt denial of rape was rectified by a partial response of the grandfather to defense counsel's question. But this was struck from the record, and we must assume the jurors disregarded the testimony. *Commonwealth* v. *Cameron*, 385 Mass. 660, 668 (1982).

Mass. 620, 623 (2002), quoting 2 McCormick, Evidence § 272, at 204 (5th ed. 1999). Second, a judge must consider whether the statement was a "spontaneous reaction to the . . . event" or more likely "the result of reflective thought." *Commonwealth* v. *Santiago, supra.* Here, there was evidence sufficient to create a question under both prongs. The judge was warranted in asking, based on the facts presented, whether the grandfather's accusation "render[ed] inoperative" the defendant's capacity for reflective thought. Similarly, the judge may have questioned whether the defendant's opportunity to deliberate while the grandfather repeated Ellen's accusation (for a duration not ascertainable from the record) supported a finding that the defendant had "time to contrive and misrepresent." *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 223 (1973), quoting J. Wigmore, Evidence § 1750 (3d ed. 1940). On the record at the time of her ruling, the judge would have been warranted in concluding that the questions defense counsel asked of the grandfather did not provide sufficient facts for her to conclude that both prongs of the test had been satisfied.

We consider now the effect of the judge's ruling on the verdicts. We are not confronted in this case solely by the effect of the ruling concerning the grandfather's excluded testimony. Rather, there were two separate errors that in combination, we conclude, deprived the defendant of the opportunity to develop his defense fully. See *Commonwealth* v. *Bohannon,* 376 Mass. 90, 94 (1978), *S.C.,* 385 Mass. 733 (1982). On a review of the entire transcript, we are left with substantial concerns whether there has been a miscarriage of justice. A new trial is warranted.

Accordingly, the judgments are reversed, the verdicts set aside, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*