Kern, Leila R., J.
The Commonwealth has moved in limine to admit three (3) minutes of a recording of a 911 call made to the Wakefield Police Department on June 19, 2010. The defendants, Philip Carter, Peter Carter and William Seaburg, have moved to have the recording excluded. For the following reasons the Commonwealth’s Motion in Limine to Admit 911 Recording is ALLOWED and Defendants’ Motions in Li-mine to Exclude 911 Call are DENIED.
BACKGROUND
On June 19, 2010, Jill Fernald called the Wakefield Police Department to report “I just saw a crime” at a neighbor’s house. She rapidly reported that she had seen two individuals, “teenagers,” at the house. She then saw one of them enter the house and heard 16 “gunshots” from the house. Ms. Fernald said, in quick succession, that she had seen one of them enter the house, using his t-shirt to enter. They were calling “Jake.” “The teenager is climbing out the window wearing rubber gloves.” The dispatcher asked for the address of the house and Ms. Fernald gave him the location as she did not know the number. She also described the house and gave her own name and address in response to questions from the dispatcher.
Throughout the dispatcher’s questioning, Ms. Fernald kept telling the dispatcher the direction the two individuals were running in as she could see them while on the phone. In answer to the dispatcher’s questions she described the clothing each was wearing. She kept interrupting and saying that one of the individuals “has a gun under his shirt.” Ms. Fernald kept repeating what she believed she had seen or was in the process of observing.
DISCUSSION
Ms. Fernald has moved out of Massachusetts and is not expected to testify at trial. The issue then for this court to consider is whether the statements on the recording are admissible with a foundation laid by the dispatcher as to the recording’s authenticify. This court must first determine if Ms. Fernald’s statements on the recording fall within an exception to the hearsay rule and then, if the statements do, are they nonetheless inadmissible because of the confrontation clause of the Sixth Amendment to the Constitution of the United States and Article 12 of the Declaration of Rights. Crawford v.Washington, 541 U.S. 36, 59 (2004). Testimonial statements of a witness who is not present at trial and subject to cross-examination are not admissible unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. Id. There is no question that Ms. Fernald will be unavailable at trial and was not subject to cross-examination at any time prior to trial. Therefore the determination as to testimonial v. non-testimonial must be considered if this court determines that the statements would be admissible as an exception to the hearsay rule.
Spontaneous Utterance Exception to Hearsay Rule
There is agreement that a statement is only admissible into evidence under the spontaneous utterance exception “if (1) there is an occurrence or event ‘sufficiently startling to render inoperative the normal reflective thought processes of the observer,’ and (2) if the declarant’s statement was ‘a spontaneous reaction to the occurrence or event and not the result of reflective thought.’ ” Commonwealth v. Santiago, 437 Mass. 620, 623 (2002), quoting 2 McCormick, Evidence §272, at 204 (5th ed. 1999). In Santiago, the Supreme Judicial Court indicated that the key inquiry *582 was whether the declarant was still under the sway of the exciting event when she made the statement. Id. at 625.
Defendant Peter Carter argues that the type of event Ms. Fernald reported here does not qualify as one that would “render inoperative the declarant’s normal thought processes.”[1] He goes on to contrast this case with ones in which the declarant is a victim of an attack. (Commonwealth v. Simon, 456 Mass. 280 (2010); Commonwealth v. Nesbitt, 452 Mass. 236 (2008)). A bystander’s spontaneous utterance may, however, be admissible where declarant testifies from personal knowledge. Commonwealth v. Harbin, 435 Mass. 654, 657 (2002) (citing Commonwealth v. McLaughlin, 364 Mass. 211, 223-24 (1973)). Here, there is no suggestion that Ms. Fernald’s statements were not made from personal knowledge. Also, there is clear evidence that she experienced the sound of what she reported as “16 gunshots” emanating from her neighbor’s house. This is an example of a startling and frightening event that would “render inoperative [her] normal thought processes” so she might reflect upon the events and dissemble about them.
Peter Carter then goes on to argue that the first few statements made by the caller, which described events, contained few limited descriptions of the individuals. It was only in response to questions from the dispatcher that the caller added to those descriptions. In and of itself, that is not determinative. See Simon, supra, at 296 where, as here, there was a level of spontaneity. Ms. Fernald was interrupted in her rapid recounting of events, some of which she was still observing, by questions about the number of individuals, what they were wearing, etc. She kept repeating, they have a gun under their shirt. Her tone of voice and rate of speech indicated spontaneity and excitement of the level necessary to meet the requirements of the exception. Ms. Femald’s belief that she had heard “gunshots” from her neighbor’s house and her continuing concern that one of the individuals had a gun, reinforces this court’s view. Based on the foregoing, the statements made by the caller, Jill Fernald, during the first three minutes of the 911 recording fall within the spontaneous utterance exception to the hearsay rule.
Testimonial v. Nontestimonial
As indicated supra, the determination that the statements fall within an exception to the hearsay rule is not the end of the analysis. The next necessary determination is whether they are testimonial for purposes of the confrontation clause. For the analysis, this court must first look at the context in which the statements were made. The Supreme Court in Davis v. Washington, 126 S.Ct. 2266, 2273-74 (2006), provided some guidelines (“Statements are nontestimon-ial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency . . .”). With respect to statements made during a 911 call, the Supreme Court set out indicia, among them: (1) whether the 911 caller was speaking about “events as they were actually happening" rather than describing] past events"; (2) whether any reasonable listener would recognize that the caller was facing an “ongoing emergency”; (3) whether what was asked and answered was, viewed objectively, “necessary to be able to resolve the present emergency, rather than simply to learn ... what had happened in the past,” including whether it was necessary for the dispatcher to know the identity of the alleged perpetrator; and (4) the level of formality of the interview. Id. at 2276-77 (emphasis in the original). See Commonwealth v. Galicia, 447 Mass. 737, 743-44 (2006).
Here, the emergency was the caller’s perception, repeated more than once, that one of the individuals had a gun tucked under his t-shirt. The first statement to the dispatcher described a “past event” in the sense that the caller reported she had seen a crime, a break-in at a neighbor’s house. She then reported she had heard 16 gunshots from inside the house and one of the individuals “used his t-shirt to enter the house.” After that everything she said was about events as they unfolded. The caller stated “the teenager’s climbing out of the window wearing rubber gloves.” She had begun by saying she heard gun shots from the house and continued to repeat that, as well as, “they have a gun,” throughout the interruptions from the dispatcher asking her to describe the neighbor’s house, its location, and so forth. At one point, the caller states, “they’re hiding the gun underneath their shirt.” She continues to refer to the weapon throughout the interruptions.
The emergency was the presence of an individual with a gun in a residential neighborhood. When Ms. Fernald was reporting “the teenager’s climbing out of the window wearing rubber gloves” and the direction in which the individuals were heading after they left her neighbor’s house, she was reporting events as they unfolded. The description of the clothing worn by two individuals was in response to questions as the caller watched them leave the scene and head toward the Common. She kept saying “I can see them.”
Statements made in response to questioning by law enforcement agents, including a police dispatcher, are “testimonial per se” unless they are made to secure a volatile situation. Commonwealth v. Nesbitt, 452 Mass. 236, 243 (2008). “Nontestimonial out-of-court statements do not give rise to a right of confrontation and may be admitted ‘if the admission is consistent with Massachusetts evidence law.’ ” Commonwealth v. Figueroa, 79 Mass.App.Ct. 389, 398 (2011) (citing Nesbitt at 244). The caller’s statements in the first three minutes of the 911 call[2] meet all four indicia *583 cited above from Davis at 2276-77 and referenced in Galicia, at 743-44. (1) After the first sentence, the caller was “speaking about events as they were actually happening”; (2) a reasonable listener would recognize the caller was facing an ongoing emergency;[3] (3) what was asked and answered was necessary to resolve the present emergency including the dispatcher’s need for a description of the alleged perpetrators;[4] and, (4) there was no formality in the questioning by the dispatcher.
ORDER
The Commonwealth’s Motion in Limine to Admit the 911 Recording is ALLOWED and the Defendants’ Motions in Limine to Exclude the 911 Call are DENIED.

This court has focused on the arguments made in Peter Carter’s Motion in Limine as these are laid out in detail. The other two defendants rely on the basic principles that the statements are hearsay and there is a confrontation clause issue to be considered.

Which this court has listened to.

Her evident concern about an individual in her neighborhood with a gun.

Apprehension of the individual the caller reported as having a gun.