## Commonwealth *vs.* Carlos I. Galicia.

Middlesex. September 5, 2006. - November 30, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Constitutional Law,* Confrontation of witnesses. *Evidence,* Testimonial statement, Unavailable witness, Cumulative evidence. *Practice, Criminal,* Confrontation of witnesses, Required finding. *Witness,* Unavailability.

This court concluded that statements made by an assault victim to a police dispatcher were admissible as excited utterances at a trial on a criminal complaint of assault and battery because the statements were made in circumstances that objectively indicated that their primary purpose was to enable police to meet an ongoing emergency [741-745]; conversely, statements the victim made to responding officers at her home when the emergency had passed fell squarely within the purview of testimonial statements precluded from admission by the Sixth Amendment to the United States Constitution absent the unavailability of the witness and prior opportunity for the defendant to cross-examine her, given that the statements were separate and apart, both temporally and physically, from the danger the victim sought to avert [745-746]; because the statements' admission was harmless beyond a reasonable doubt, however, this court declined to reverse the defendant's conviction [746-748]; further, evidence as to the defendant's identity, albeit wholly or partially circumstantial, was sufficient to sustain his conviction [748-749].

Complaint received and sworn to in the Framingham Division of the District Court Department on June 16, 2003.

The case was heard by *Robert V. Greco*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Theodore F. Riordan* (*Deborah Bates Riordan* with him) for the defendant.

*Nicole Allain*, Assistant District Attorney (*Marguerite Grant*, Assistant District Attorney, with her) for the Commonwealth.

Marshall, C.J. We consider in this case whether a judge properly admitted in evidence statements made by a victim in the course of an emergency 911 telephone call and later to police

officers who responded to the scene. The statements concerned an assault by the defendant, Carlos Galicia, the husband of the victim, and were admitted in the defendant's trial at which he was convicted of assault and battery. See G. L. c. 265, § 13A (*a*). The victim did not testify at the trial.

On appeal, the defendant claims that the admission of the victim's statements violated his rights under the confrontation clause of the Sixth Amendment to the United States Constitution.[1] He also claims that the trial evidence was insufficient to support his conviction because it failed to identify him as the perpetrator.

The disposition of this case turns on recent developments in the United States Supreme Court's confrontation clause jurisprudence. On March 8, 2004, the Supreme Court issued *Crawford* v. *Washington*, 541 U.S. 36 (2004) (*Crawford*). The defendant's appeal was entered in the Appeals Court on November 22, 2004. *Crawford* concerned the admission in evidence of tape-recorded statements made by a victim during a police interrogation while in police custody. The Court held that those statements were testimonial and therefore barred from admission by the confrontation clause of the Sixth Amendment. *Id.* at 68. In his initial appellate brief, the defendant claimed that *Crawford* mandated the reversal of his conviction.

On July 5, 2005, we transferred the case here on our own motion. After the case was entered and briefs submitted, but before oral argument, the United States Supreme Court decided *Davis* v. *Washington*, 126 S. Ct. 2266 (2006) (*Davis*),[2] which elucidated the distinction between nontestimonial (and therefore

---

[1]The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The defendant raises no claim under the Declaration of Rights of the Massachusetts Constitution.

[2]The defendant's initial brief was filed in the Appeals Court on February 18, 2005, and refiled in this court on August 1, 2005, after the case was transferred here from the Appeals Court. The Commonwealth's brief was filed in the Appeals Court on May 27, 2005, and refiled in this court on July 28. *Davis* v. *Washington*, 126 S. Ct. 2266 (2006) (*Davis*), was decided on June 19, 2006. The defendant filed a supplemental brief on August 10, and on the same day the Commonwealth filed a supplemental memorandum of law in support of its brief. We heard argument on September 5.

admissible) statements and testimonial (and therefore inadmissible) statements left open in *Crawford*.[3]

The Commonwealth and the defendant agree that *Davis* governs our analysis of the defendant's Sixth Amendment claims, see *Griffith* v. *Kentucky*, 479 U.S. 314, 322 (1987) ("failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication"), and, unremarkably, both assert that it supports their position. Neither is entirely correct. We conclude that, under the rule announced in *Davis*, and as we explain more fully below, the statements made by the victim to the 911 dispatcher were admissible because they were made in circumstances that objectively indicated that their primary purpose was to enable police to meet an ongoing emergency. *Davis, supra* at 2273. Conversely, the statements the victim made to responding officers at her home when the emergency had passed were improperly admitted in evidence. Because the admission of the latter was harmless beyond a reasonable doubt, we decline to reverse the conviction. We further conclude that the evidence as to the defendant's identity was sufficient to sustain his conviction. We therefore affirm.

1. *Background.* On June 16, 2003, the defendant was arraigned on a complaint of assault and battery, assault and battery by means of a dangerous weapon (shod foot), and witness intimidation in connection with an assault on June 15, 2003, of the victim. The defendant pleaded not guilty to the charges.[4] He subsequently waived his right to a jury trial.

Prior to trial, the Commonwealth filed a motion in limine to introduce a recording of a telephone call made by the victim to the Ashland police department, as well as statements the victim later made to Ashland police officers at the scene. Over the defendant's objection,[5] the judge ruled that the statements were

---

[3]*Davis* was a decision that considered two appeals. *Hammon* v. *State*, 829 N.E.2d 444 (Ind. 2005). *State* v. *Davis*, 154 Wash. 2d 291 (2005).

[4]At trial, the Commonwealth nol prossed the counts alleging assault and battery by means of a dangerous weapon and intimidation of a witness.

[5]The Commonwealth states in its brief that the defendant filed a written objection to the motion in limine. The opposition does not appear on the docket, and we have not been furnished with a copy of any written opposition.

admissible as "excited utterances."[6] The trial took place that same day, before the same judge. At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty on the sole ground that the Commonwealth had failed to prove that the defendant was the perpetrator. The motion was denied. At the close of evidence, he renewed the motion, which was again denied. The judge found the defendant guilty.

We summarize the evidence at trial,[7] reserving the recitation of certain facts for later discussion.

At approximately 9:50 P.M., Ashland police department dispatcher Tamar Luciani received an emergency 911 telephone call. As reflected in the recording of that telephone call, Luciani asked, "What is your emergency?" A female voice stated, "My husband's beating me up right now!" After confirming that the caller lived in apartment 8 at 19 Joanne Drive, Luciani asked, "Where is your husband now?" The caller responded, "Ow! . . . I'm in the kitchen!" When the dispatcher asked who else was home with her, the caller responded, "My son and my daughter." The dispatcher asked, "Is your last name 'Galicia'?" to which the caller responded, "Yes. Ow!"

Less than five minutes later, Officer Greg Wildman arrived at 19 Joanne Drive.[8] He testified that he found the door to apartment 8 open, and noted several chairs turned over inside the

---

[6]"Under the spontaneous exclamation exception to the hearsay rule, 'a statement is admissible if its utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event.' " *Commonwealth* v. *Crawford*, 417 Mass. 358, 362 (1994), quoting *Commonwealth* v. *Brown*, 413 Mass. 693, 695-696 (1992).

[7]The evidence adduced at the hearing on the motion in limine and the trial was substantially similar. The Commonwealth called the same two police officers to testify; a police dispatcher testified only at the trial. The testimony of the first officer, Officer Greg Wildman, is similar at the motion hearing and at trial, but at the motion hearing only he testified that the victim had said that the "adult male inside was her husband [the defendant]." At the motion hearing, Officer Elena Downey testified that the victim "had been upset, but was calm" when they spoke, and that the victim had refused medical treatment and wanted a protective order issued against her husband. Officer Downey did not testify to these observations or statements at the trial.

[8]Officer Wildman was the second officer to arrive at the scene. The first officer to arrive, Sergeant Testa, whose first name does not appear in the record,

apartment. Also inside the apartment was a man with his shirt off and a woman who was "upset." She had "some scratches on her face and her chin" and appeared "tearful." Officer Wildman asked the woman, then standing in the hallway outside the apartment, to take some deep breaths to calm herself, and then proceeded to talk to her. The woman informed the officer that her husband had accused her of being unfaithful and that a physical altercation had ensued during which her husband had punched, choked, and kicked her.

Officer Elena Downey arrived at the scene while Officer Wildman was in the hallway talking to the victim. She testified that the victim showed her marks on her back, face, neck, and legs,[9] and stated that she had been choked, pushed, and kicked to the ground. The victim also told Officer Downey that her husband had accused her of being unfaithful, and that she was planning to move with her two children to Chicago for a job in two weeks.

We now turn to the grounds for appeal.

2. *Confrontation clause.* The defendant contends that, because the victim's statements to the police dispatcher and her statements to the responding officers were "testimonial" under the confrontation clause, they were improperly admitted at trial. See *Crawford, supra* at 68. Our analysis of his claims turns on the distinction between testimonial and nontestimonial statements set out in *Crawford* and *Davis,* to which we now turn.

Both *Crawford* and *Davis* counsel that the determination whether a statement is testimonial or nontestimonial for confrontation clause purposes is highly dependent on the context in which the statement was made. At issue in *Crawford* was whether a wife's statements to police officers during the course of a formal police interrogation were admissible against her husband at his trial for assault and attempted murder of a third party. *Crawford, supra* at 38-39. In examining whether the statements were testimonial for purposes of the Sixth Amendment, the Court considered the historical background of the

did not testify at either the motion hearing or the trial.

[9] The Commonwealth introduced in evidence a photograph of the victim's injuries. Officer Downey testified that this photograph was an accurate portrait of the victim's appearance on the night of the incident.

right of a criminal defendant "to be confronted with the witnesses against him." The Court determined that, broadly speaking, at the time of the founding, a witness's out-of-court statement was "testimonial" if it was a "solemn declaration or affirmation made for establishing or proving some fact." *Id.* at 51, quoting Webster's American Dictionary of the English Language (1828). The Court noted that, by barring such testimony from evidence except where the witness was unavailable and the defendant had prior opportunity for cross-examination, the Sixth Amendment sought to avert the "principal evil [of the] civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.* at 50. In contrast, "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design" to afford States the latitude to develop their own hearsay rules or other rules of admissibility concerning such statements. *Id.* at 68.[10] In *Crawford* the Court declined to provide a "comprehensive definition" of testimonial statements, *id.*, but held that, under any reasonable construction of the term, statements made by the wife to law enforcement officers about the alleged crimes after she had been advised of her Miranda rights were "testimonial."

In *Davis*, the Court applied the rule announced in *Crawford* to two cases concerning 911 calls and initial police interrogation. In the first case, the victim reported a domestic disturbance to the 911 dispatcher as she was being attacked.[11] She is recorded in her 911 call as stating: "He's here jumpin' on me again. . . . He's usin' his fists. . . . He's runnin' now." *Davis, supra* at 2271. She identified her attacker to the 911 operator as Adrian

---

[10]The Court in *Crawford* v. *Washington*, 541 U.S. 36 (2004) (*Crawford*), departed from *Ohio* v. *Roberts*, 448 U.S. 56, 66 (1980), which permitted dispensing with traditional guarantees that a defendant be able to face an accuser in court if the testimony bears "adequate 'indicia of reliability.' "

[11]The *Davis* Court stated that "inquiries of a police operator in the course of a 911 call are an interrogation in one sense, but not in a sense that 'qualifies under any conceivable definition.' " *Davis, supra* at 2274, quoting *Crawford, supra* at 53 n.4. The Court elaborated: "If 911 operators are not themselves law enforcement officers, they may at least be agents of law enforcement when they conduct interrogations of 911 callers." *Id.* at 2274 n.2. For the purpose of the *Davis* decision, the Court considered the acts of 911 dispatchers to be acts of the police. *Id.*

Davis, her former boy friend. *Id.* At trial, the caller did not testify. *Id.* Over the defendant's objection, the trial court judge admitted the 911 conversation, as well as police observations at the scene[12] (to which there was no objection), and a jury convicted him. *Id.*

In the second case, police responded to a "reported domestic disturbance,"[13] but when they arrived, the wife told them that "nothing was the matter." *Id.* at 2272. The husband reported that the couple had been arguing but that no physical violence had occurred. *Id.* After separating the spouses and taking a statement from the wife in which she recounted that her husband "broke" furniture, "shoved" and "hit" her, and "[a]ttacked my daughter," the officers placed the husband under arrest. *Id.*

The consolidated cases provided the Supreme Court with an opportunity to clarify the nature of "testimonial" statements barred from admission under the confrontation clause. Again, the Court declined "to produce an exhaustive classification of all conceivable statements — or even all conceivable statements in response to police interrogation — as either testimonial or nontestimonial." *Id.* at 2273. The Court did, however, provide the following guidelines:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency . . . ."

*Id.* at 2273-2274.

Further, the Court elaborated on indicia that help determine whether, objectively, the "primary purpose" of a statement may be said to be testimonial. Among these indicia are: (1) whether the 911 caller was speaking about "events *as they were actually*

---

[12]The police arrived at the scene within four minutes of the call, and noted that the victim had fresh injuries to her face and forearm and appeared in a "shaken," "frantic" state. *Davis, supra* at 2271.

[13]The *Davis* Court, *id.* at 2272, adopted the description used by the Supreme Court of Indiana, which did not mention who had reported the disturbance. See *Hammon* v. *State*, 829 N.E.2d 444, 446 (Ind. 2005).

*happening* rather than describ[ing] past events"; (2) whether any reasonable listener would recognize that the caller was facing an "ongoing emergency"; (3) whether what was asked and answered was, viewed objectively, "necessary to be able to *resolve* the present emergency, rather than simply to learn . . . what had happened in the past," including whether it was necessary for the dispatcher to know the identity of the alleged perpetrator; and (4) the "level of formality" of the interview (emphasis in original). *Id.* at 2276-2277. Statements that were made in circumstances that objectively indicated the "primary purpose . . . is to enable police assistance to meet an ongoing emergency" were nontestimonial, for the declarant was not "testifying" to anything.[14]

Applying these criteria, the Supreme Court held that the statements to the 911 operator in the Washington case considered in *Davis* were nontestimonial, and thus admissible even without the unavailability of the witness and an opportunity for cross-examination. *Id.* at 2277. The victim's statements were made "in an environment that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe." *Id.* Furthermore, the operator's efforts to establish the identity of the assailant and the details of the crime scene are crucial "so that the dispatched officers might know whether they would be encountering a violent felon." *Id.* at 2276. In contrast, the statements in the Indiana case considered in *Davis* concerned past events. As statements about alleged past actions, they were testimonial and should have been excluded from evidence. *Id.* at 2279.

We turn now to the record before us. Under the rule an-

---

[14]Cf. *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 3 (2005), cert. denied, 126 S. Ct. 2982 (2006), decided before the United States Supreme Court issued *Davis*, where we held that, under the Sixth Amendment, statements made in response to questioning by law enforcement agents were per se testimonial, except when the questioning was meant "to secure a volatile scene or to establish the need for or provide medical care. Further, out-of-court statements that are not testimonial per se must be examined to determine if they are nonetheless testimonial in fact by evaluating whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting a crime." *Id.* See *United States* v. *Brito*, 427 F.3d 53 (1st Cir. 2005), cert. denied, 126 S. Ct. 2983 (2006) (911 call nontestimonial).

nounced in *Davis*, the 911 recording in this case was admissible, as the defendant himself appears to concede.[15] The call concerned an assault that was actually happening, and that any reasonable listener would conclude constituted an ongoing emergency ("My husband's beating me up right now! . . . Ow! . . . Ow!"). The caller's responses to questions were properly elicited to determine what was necessary to resolve the present emergency, including the identity and location of the caller and her alleged perpetrator ("What is your emergency? . . . Where is your husband now? . . . Is your last name 'Galicia'?"), and the questions occurred in the highly informal setting of a telephone call to a 911 dispatcher. In the language of *Crawford* and *Davis*, the statements bore no witness to any event, but identified an exigent circumstance and provided law enforcement with the information necessary to assess the current level of dangerousness of the situation. They were properly admitted as excited utterances.

The same is not true of the statements the victim made to the responding officers. Viewed objectively, the victim's statements to officers occurred separate and apart from the danger she sought to avert, both temporally and physically. Officer Wildman testified at the motion in limine hearing that, when he arrived, he "determined that the scene was safe." By the time the testifying officers had arrived, the assault had ended and urgency had subsided.[16] While the victim may have been "upset" and visibly "tearful," we cannot say that the "primary purpose" of

---

[15]In his supplemental brief, submitted in response to the newly-issued *Davis* opinion, the defendant recognizes the "potential admissibility" of the 911 recording ("In light of *Davis*, the 911 phone call in this case appears to qualify as nontestimonial and not subject to the Confrontation Clause"). We consider the admissibility of the recording because the question is likely to arise in other criminal matters, and its resolution here is essential to our consideration of the sufficiency of the evidence.

The defendant also contends that, if admissible, the recording should have been admitted only for the limited purpose of demonstrating that abuse took place, not to connect any events or observations on the scene with the caller's statement. We conclude that the weight of the evidence allows a fact finder to decide that the person who telephoned 911 and appeared at the scene were the same person. See *Commonwealth v. Brooks*, 422 Mass. 574, 577 (1996) ("The inferences drawn by the [fact finder] need only be reasonable and possible and need not be necessary or inescapable").

[16]Officer Downey testified at the motion in limine hearing only that the

her statements, objectively viewed, was to "enable police assistance to meet an ongoing emergency." *Davis, supra* at 2273. The interview itself took on the more formal cast of a police investigation of a crime. Thus, we conclude that the statements the victim made to officers on the scene fall squarely within the purview of "testimonial" statements precluded from admission by the Sixth Amendment absent the unavailability of the witness and prior opportunity for the defendant to cross-examine her. It was error for those statements to be admitted at trial.

Having determined that the victim's statements to the police officers at the scene were not admissible, we consider the appropriate relief. The defendant asks that we consider the admission of the constitutionally proscribed evidence under the "harmless beyond a reasonable doubt" standard applicable where a constitutional objection is properly preserved. See, e.g., *Delaware* v. *Van Arsdall*, 475 U.S. 673, 684 (1986); *Commonwealth* v. *Marini*, 375 Mass. 510, 520 (1978). See also *Commonwealth* v. *Perrot*, 407 Mass. 539, 548-549 (1990). The Commonwealth argues that the defendant failed to preserve a challenge to these statements on constitutional grounds. If the defendant's constitutional objection was not preserved, we still review the claim to determine whether there was a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 26 (1998). At trial, defense counsel responded to the Commonwealth's efforts to admit the victim's statements to responding officers merely by stating a general objection "for the record." The Commonwealth is correct that, in most cases, such objection would be insufficient to preserve the constitutional claim. However, "[t]he adequacy of the objection has to be assessed in the context of the trial as a whole." *Commonwealth* v. *Koney*, 421 Mass. 295, 299 (1995).

At the hearing on the motion in limine, defense counsel objected to the statements at issue with sufficient specificity to note an objection on constitutional grounds. In particular,

victim refused medical treatment. Under *Davis*, inquiries by officers whether a victim requires medical treatment are admissible, as they are necessary to "*resolve* the present emergency" (emphasis in original). *Davis, supra* at 2276. Cf. *Commonwealth* v. *Gonsalves, supra* at 3 (statements not testimonial when "meant to secure a volatile scene or to establish the need for or provide medical care").

defense counsel noted several times that admission in evidence of the victim's statements to the police dispatcher and to responding officers was inadmissible hearsay that bore insufficient "indicia of reliability" and deprived the defendant of the opportunity to "cross-examine" the witness. He thereby raised an objection based on the confrontation clause, using the terminology and principles that then governed confrontation clause analysis. *Ohio* v. *Roberts*, 448 U.S. 56, 66 (1980). See note 10, *supra.* The judge who heard the motion in limine was the same judge who, later that same day, heard the case without a jury. In these circumstances the defendant sufficiently preserved his constitutional objection. Cf. *Davis, supra* at 2266, 2272 (defense counsel's objection to victim's signed affidavit, "That doesn't give us the opportunity to cross examine [the] person who allegedly drafted it. Makes me mad," sufficient to preserve defendant's Sixth Amendment objection).

In any event, we conclude that the improperly admitted statements to responding officers did not constitute reversible error under either standard cited above. Here, the evidence properly admitted includes an unequivocal report of assault, and observations of officers who arrived at the location of the caller within five minutes that a woman was tearful and upset and wounded on several places on her body.[17] Police officers also noted a man wearing no shirt (from which a fact finder could infer that he was not a visitor), standing in a room with chairs knocked over. The caller on the telephone had reported that she was then being beaten by her "husband," and that the only people at home with her were her husband and her two children. Police arrived at the scene to find the defendant, the victim, and two children. The victim's improperly admitted statements to the officers that her husband punched, choked, and kicked her, only corroborated the properly admitted evidence — her

---

[17]"The testimony of witnesses concerning the victim's demeanor and injuries . . . [is] admissible." *Commonwealth* v. *Bianchi*, 435 Mass. 316, 323 (2001), citing P.J. Liacos, Massachusetts Evidence § 8.1, at 463 n.2 (7th ed. 1999) (in murder case, testimony of witnesses about injuries after prior assault not hearsay and properly admitted). The defendant does not challenge the admission of the observations by Officers Wildman and Downey of a "tearful" woman with scratches on her face, chin, arm, knee, leg and upper thigh, a man with his shirt off, and chairs overturned.

report of abuse at the hands of her husband and officers' subsequent observations. Thus, the "erroneously admitted evidence was 'merely cumulative' of evidence properly before the [fact finder]." *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 n.8 (1987). It was not evidence that "had, or might have had, an effect on the [fact finder] and . . . contributed to or might have contributed to the verdicts." *Commonwealth* v. *Perrot, supra* at 549, citing *Commonwealth* v. *Marini*, 375 Mass. 510, 520 (1978).

3. *Required finding of not guilty.* The defendant argues that he is entitled to a required finding of not guilty because no sufficient evidentiary basis exists for the judge to conclude that he is the husband of the victim, or that he is the person accused of doing the crime. See Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979); *Commonwealth* v. *Salemme*, 395 Mass. 594 (1985) (finding of not guilty required where evidence insufficient as matter of law to sustain conviction on charge). We disagree.

The evidence shows that the defendant was identified by the Commonwealth's witness, Officer Wildman, as the person arrested at the scene and booked, apparently without protest, under the name "Carlos Galicia." The evidence further shows that the 911 caller identified her "husband" as the perpetrator who had beaten her when she called 911, and identified only her husband and her two children as present during the call. When Officer Wildman arrived at the scene within minutes of the 911 call, he saw the defendant in the house as the only male adult, and noted that the man had his shirt off. The defendant and the victim share the same last name.

Although some or all of this evidence may be circumstantial, as the defendant argues, it nevertheless is sufficient, in total, to support the inference that the defendant is the husband of the victim, and the perpetrator of the crime. See *Commonwealth* v. *Brooks, supra* at 577 ("Although there was no direct evidence [of the crime] . . . there was sufficient circumstantial evidence . . . . The inferences drawn by the [fact finder] need only be reasonable and possible and need not be necessary or inescapable"). See also *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979) ("[The] question is whether, after viewing the evidence

in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" [emphasis in original]).[18]

4. *Conclusion.* For the foregoing reasons, the judgment of conviction of assault and battery is affirmed.

*So ordered.*

---

[18]The sole defense in this case was reasonable doubt. But the defendant simultaneously sought to prove that he was not the attacker and that the victim had a motive to fabricate a tale of abuse: namely, to avoid a custody battle when she attempted to relocate with the couple's children to another State. The suggestion of bias was based on Officer Downey's testimony of what the victim said to her at the crime scene. The defendant relied on the use of hearsay statements made by the victim to Officer Downey, whose testimony substantially confirmed the testimony of Officer Wildman concerning the victim's appearance and statements at the crime scene.