## Commonwealth *vs.* Joseph Beatrice.

No. 08-P-531.

Plymouth. May 4, 2009. - August 31, 2009.

Present: Kafker, Smith, & Sikora, JJ.

Further appellate review granted, 455 Mass. 1108 (2010).

*Practice, Criminal,* Confrontation of witnesses. *Constitutional Law,* Confrontation of witnesses. *Evidence,* Testimonial statement, Spontaneous utterance, Verbal completeness, Self-defense, Hearsay, Prior inconsistent statement.

At the trial of complaint charging the defendant with assault and battery stemming from a physical altercation with his girlfriend, the admission in evidence of the tape recording of a 911 telephone call made by the victim, who did not testify at trial, did not violate the defendant's rights under the confrontation clause of the Sixth Amendment to the United States Constitution, where the statement — in which the victim was out of breath and frantic, indicated that the assault had taken place only moments earlier, responded affirmatively when asked if she needed an ambulance, and could have reasonably feared that the defendant might pursue her and that she could not safely return to her own apartment where the defendant was present — constituted an excited utterance and was not testimonial. [155-158]
This court discerned no abuse of discretion in the judge's evidentiary rulings on the issue of self-defense at the trial of a complaint charging the defendant with assault and battery stemming from a physical altercation with his girlfriend [158-160], and the judge did not err in refusing to allow in evidence certain additional testimony on that issue [160-161].

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on April 20, 2006.

The case was tried before *James F.X. Dinneen,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Christine M. Kiggen,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. The defendant was convicted of one count of assault and battery stemming from a physical altercation with his

girlfriend on April 7, 2006.[1] He claims primarily that admission in evidence of the tape recording of a 911 call made by the victim, who did not testify at trial, violated his rights under the confrontation clause of the Sixth Amendment to the United States Constitution. The defendant also objects to evidentiary rulings regarding his self-defense claim. For the reasons that follow, we affirm the defendant's conviction.

*Background.* The jury could have found the following facts. The defendant and the victim had been dating on and off for approximately four years and were living together in April, 2006. The defendant was six feet two inches tall and weighed approximately 220 pounds. The victim was four feet eleven inches tall and weighed approximately 123 pounds.

On April 7, 2006, the defendant was on the toilet when the victim came into the bathroom to get a cigarette. The defendant refused to give her one, and the two got into a heated argument. During the argument, the victim scratched the defendant's face, and he punched her in the eye. According to the defendant's testimony, after he punched her, she left the room. The defendant finished in the bathroom and followed the victim into the bedroom, where they continued arguing. The victim wanted to leave the bedroom, but the defendant would not let her. The victim ran to a neighbor's house.

Using the neighbor's phone, the victim called 911. During the call, she was out of breath and frantic. She immediately told the dispatcher, "I'm using my neighbor's phone. I live at [address]. My boyfriend just beat me up. He beat the shit out of me. I need a cruiser." The dispatcher then asked for her boyfriend's name, and the victim responded, "Joseph Beatrice." Next, the dispatcher asked if the defendant was still in her apartment, to which the victim responded, "He's still there," followed by something

---

[1]The defendant was charged with threatening to commit a crime, intimidating a witness, and two counts of assault and battery in connection with the April 7, 2006, incident. He was also charged with threatening to commit a crime and assault and battery for another incident involving the same victim on April 12, 2006. Prior to trial, the April 7, 2006, threatening and witness intimidation charges were dismissed at the request of the Commonwealth. The remaining four counts went to trial before a jury. The jury found the defendant guilty of one count of assault and battery on April 7, 2006, and not guilty of the remaining three charges.

inaudible. Finally, the dispatcher asked if the victim needed an ambulance, and the victim responded "Umm. Please. And I, I need you to send the cops now before he leaves."

Officer Jorges Moreno responded to the 911 call. He observed that the victim had a "shiner," some swelling above both eyebrows, and abrasions on her left arm and right ankle. Five days later, on April 12, 2006, Officer Scott Uhlman responded to another 911 call made by the victim. He observed no fresh injuries from that incident but did see that the victim had a black eye and some red marks on her neck.

Detective Jacqueline Congdon interviewed the defendant on April 13, 2006. The defendant told her that he and the victim had a heated argument on April 7 and that when the victim scratched his face, he "snapped." He also told the detective that the victim wanted to leave the room, but he would not let her because he was afraid. The defendant denied putting his hands around the victim's throat or dragging her down the hallway by her legs, but he did admit to punching her in the eye and claimed they had bitten one another. Detective Congdon did not see any bite marks on the defendant, but did observe some bite marks on the victim's shoulder when she interviewed her on April 13, 2006.

*Discussion. Admissibility of the 911 call.* The defendant first claims that the admission of the tape recording of the nontestifying victim's April 7, 2006, 911 call violated his right of confrontation under the Sixth Amendment to the United States Constitution.[2] The admissibility of an out-of-court statement is resolved by a two-part inquiry. First, we determine whether the statement is admissible under the rules of evidence. Second, we determine whether its admission comports with the confronta-

---

[2] "The Sixth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment to the United States Constitution, guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' " *Commonwealth* v. *Lao*, 450 Mass. 215, 222 (2007). "The right of confrontation also is protected by art. 12 of the Massachusetts Declaration of Rights . . . ." *Ibid.* Although the defendant has not challenged the ruling under art. 12, "in cases like this one involving the hearsay rule and its exceptions, . . . the protection provided by art. 12 is coextensive with the guarantees of the Sixth Amendment to the United States Constitution." *Id.* at 223, quoting from *Commonwealth* v. *DeOliveira*, 447 Mass. 56, 57 n.1 (2006).

tion clause under the criteria set forth in *Crawford* v. *Washington*, 541 U.S. 36 (2004); *Davis* v. *Washington*, 547 U.S. 813 (2006); and *Commonwealth* v. *Gonsalves*, 445 Mass. 1 (2005), cert. denied, 548 U.S. 926 (2006) (collectively the "*Crawford-Davis-Gonsalves* inquiry"). *Commonwealth* v. *Nesbitt*, 452 Mass. 236, 243 (2008).

The victim's call was admissible under the rules of evidence as an exception to the hearsay rule because it was a spontaneous (or excited) utterance, see Mass. G. Evid. § 803(2) (2008-2009); therefore it satisfies the first part of the inquiry. The physical altercation was a sufficiently startling event, and the victim's reaction was spontaneous. See *Commonwealth* v. *Santiago*, 437 Mass. 620, 623 (2002) (characteristics of spontaneous utterance); *Commonwealth* v. *Nesbitt*, *supra* at 246 (victim's 911 call was spontaneous utterance when made moments after she was attacked). During the 911 call, the victim was frantic and out of breath, and said that the altercation had "just" happened.

This leaves the question whether the call satisfies the requirements of the confrontation clause. The confrontation clause applies only to testimonial statements. *Davis* v. *Washington*, *supra* at 821, citing *Crawford* v. *Washington*, *supra* at 51. However, "statements made in response to questioning by law enforcement agents are per se testimonial,[3] except when the questioning is meant to secure a volatile scene or to establish the need for or provide medical care." *Commonwealth* v. *Gonsalves*, *supra* at 3. In other words, statements are nontestimonial when "the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis* v. *Washington*, *supra* at 822.

To determine the primary purpose of the interrogation, we consider the factors set out in *Davis* v. *Washington*: "(1) whether the 911 caller was speaking about 'events *as they were actually happening* rather than describ[ing] past events'; (2) whether any reasonable listener would recognize that the caller was facing an 'ongoing emergency'; (3) whether what was asked and answered was, viewed objectively, 'necessary to be able to *resolve* the

---

[3]Dispatchers are considered agents of the police when they interrogate 911 callers. See *Davis* v. *Washington*, *supra* at 822 n.2; *Commonwealth* v. *Galicia*, 447 Mass. 737, 742 n.11 (2006).

present emergency, rather than simply to learn . . . what had happened in the past,' including whether it was necessary for the dispatcher to know the identity of the alleged perpetrator; and (4) the 'level of formality' of the interview (emphasis in original)." *Commonwealth* v. *Galicia,* 447 Mass. 737, 743-744 (2006), quoting from *Davis* v. *Washington, supra* at 827.

After considering the *Davis* factors, we conclude that the statements made in the call were not testimonial per se but rather were made during an emergency and were nontestimonial. The victim's demeanor on the tape recording — she was out of breath and frantic — and her statement that the defendant had "just" beaten her up indicated that the assault had taken place only moments earlier. The emergency was also ongoing. In the call, the victim told the dispatcher that the defendant was still in the apartment. In addition, she responded affirmatively when the dispatcher asked if she needed an ambulance.

Furthermore, the dispatcher's questions "were properly tailored 'to determine what was necessary to resolve the present emergency.' " *Commonwealth* v. *Nesbitt,* 452 Mass. at 247-248, quoting from *Commonwealth* v. *Galicia, supra* at 745. This includes her questions asking the defendant's name and whether he was still at the scene. See *Davis* v. *Washington, supra* at 827 (identity of assailant necessary to "*resolve* the present emergency . . . so that the dispatched officers might know whether they would be encountering a violent felon") (emphasis in original); *Commonwealth* v. *Galicia, supra* at 744. Finally, "the dispatcher's questions were responsive to [the victim's] pleas for help and did not reflect a high level of formality." *Commonwealth* v. *Nesbitt, supra* at 248.

We reject the defendant's contention that there was no ongoing emergency because the victim dialed 911 from a neighbor's house and was therefore separated from the defendant and not in immediate peril. He relies primarily on *Commonwealth* v. *Lao,* 450 Mass. 215 (2007), for this argument. In *Lao,* the defendant allegedly attempted to run the victim over with his car and then departed. After he left, the victim told her daughter about the incident, paged the defendant, spoke to him when he returned her page, paged him several more times, and called her mother to tell her what had happened. Only after making all of these calls did the victim dial 911. *Id.* at 217. In that case, the Supreme

Judicial Court concluded that the victim "was not in imminent personal peril at the time the 911 call was made because the defendant already had left the scene of the incident. Therefore, [her] 911 call was not the reporting of an emergency situation, but, rather, was a 'solemn declaration . . . made for the purpose of establishing' . . . that the defendant had tried to run over her with his car." *Id.* at 226, quoting from *Crawford* v. *Washington*, 541 U.S. at 51.

This case is readily distinguishable from *Commonwealth* v. *Lao*. Although the victim was able to flee to a neighbor's house to use the phone, the defendant was still present at the scene. Consequently, the victim could have reasonably feared that the defendant might pursue her and that she could not safely return to her own apartment. The victim was also in need of medical attention. An ongoing emergency may still exist even though the victim and the assailant are physically separated at the time the 911 call is made. See *Commonwealth* v. *Nesbitt, supra* at 247 (concluding that situation presented ongoing medical emergency where 911 call was made moments after stabbing and victim was asking for medical care).[4] In sum, the victim's 911 call was admissible, as it was an excited utterance and was not testimonial. There was no error.

*The defendant's statement to Detective Congdon.* The defendant also objects to the trial judge's handling of his statement to Detective Congdon. The defendant wanted to introduce, during the cross-examination of the detective, the portion of his statement informing the detective that he had prevented the victim from leaving the room because he was afraid she would get a knife and stab him as she had four months earlier. He contends that he should have been able to do so at that point in the trial under the doctrine of verbal completeness, citing *Commonwealth*

---

[4]See *People* v. *Brenn*, 152 Cal. App. 4th 166, 176-177 (2007) (rejecting defendant's argument that stabbing victim was no longer facing emergency when he dialed 911 because he had gone next door to make call). See also *People* v. *Walker*, 273 Mich. App. 56 (2006) (911 call made by neighbor after victim escaped from defendant, who had been beating her all night, and fled to neighbor's home was not testimonial); *State* v. *Kemp*, 212 S.W.3d 135 (Mo. 2007) (911 call — including victim's statements made in background — made by neighbor after victim escaped from defendant, who was on drugs and had been holding her hostage all night, was not testimonial).

v. *Eugene*, 438 Mass. 343, 350-351 (2003).[5] The defendant further contends that, because he was precluded from eliciting this portion of his statement from Detective Congdon on cross-examination, he testified at trial in order to provide a factual basis for a self-defense instruction and thereby opened the door for the Commonwealth to introduce evidence of his prior convictions of assault and battery. We discern no abuse of discretion in the judge's evidentiary rulings on this issue.

The trial judge informed the defendant and his counsel that if they wanted to introduce evidence of the January stabbing at trial to establish the basis for a self-defense claim for what took place in April, it would be necessary to have someone testify who was present at the stabbing. The judge was understandably hesitant to allow the January incident to become a focal point of the trial and to have it be addressed entirely by hearsay. We consider the judge's ruling requiring testimony from someone who observed the stabbing to be well within his discretion. Moreover, at the time the judge made this initial ruling, there was a recently added witness on the defendant's witness list named Kelly Burgess, who was supposed to testify about the January stabbing. The judge had determined that she could testify despite the Commonwealth's objection. Her testimony would have eliminated the need to rely on hearsay evidence to establish proof of the earlier stabbing and possibly provided support for a self-defense instruction without testimony from the defendant. The defendant, however, was unable to locate the witness to testify at trial.

The trial judge also specifically told the defendant that "[i]f he doesn't want to testify, he doesn't have to." He thereby left the logistics of raising the self-defense claim to the defendant and his counsel. Again, this was within the judge's discretion. "That a defendant may need to testify or present evidence in order to raise self-defense does not violate State or Federal constitutional privileges against self-incrimination." *Commonwealth* v. *Toon*, 55 Mass. App. Ct. 642, 651 n.12 (2002) (and cases cited).[6]

---

[5] As we discuss *infra*, the detective testified about these portions of the defendant's statement during the defendant's case.

[6] To raise a self-defense claim, there must be sufficient evidence to establish (1) that "the defendant had 'a reasonable concern over his personal safety,'

Finally, the judge allowed the defendant to recall the detective to corroborate the defendant's version of events. Compare *Commonwealth* v. *Henry*, 37 Mass. App. Ct. 429, 433 (1994) ("[t]he doctrine of rehabilitative testimony allows defense counsel to recall a witness [or to introduce prior consistent statements by other means] only if there is a suggestion of 'recent contrivance' "). Thus the contested statements were ultimately admitted for the benefit of the defendant.

*The victim's statement to Detective Congdon.* The defendant's final claim is that the judge erred by excluding testimony from Detective Congdon that the victim told the detective that she had stabbed the defendant in January, 2006. The defendant contends that this testimony was admissible under Proposed Mass. R. Evid. 806, the principles of which were accepted in *Commonwealth* v. *Mahar*, 430 Mass. 643, 649 (2000). As provided in rule 806, "When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." *Ibid.* In *Mahar*, the defendant sought to impeach a nontestifying victim's admitted hearsay statement by offering inconsistent statements she made to a private investigator regarding the offense. *Id.* at 650.

In the instant case, there is very little in the record regarding

*Commonwealth* v. *Baseler*, 419 Mass. 500, 502-503 (1995); (2) he used all reasonable means to avoid physical combat; and (3) the degree of force used was reasonable in the circumstances." *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. 367, 369 (2004). Although the defendant testified at trial that the victim threatened to stab him on April 7, during cross-examination he admitted that he did not tell Detective Congdon about that threat. The detective likewise made no reference to a threat. Without the defendant's testimony, the evidence only suggested that the defendant, who was almost 100 pounds heavier and over a foot taller than the victim, "snapped" when the victim scratched his face. He then punched her in the eye and restrained her in a room. He allegedly restrained her out of fear that she would stab him even though she was unarmed and had not threatened to get a knife. This was clearly insufficient to entitle him to a self-defense instruction. See *id.* at 368, quoting from *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998) (defendant entitled to self-defense instruction "if any view of the evidence would support a reasonable doubt as to whether the prerequisites of self-defense were present"). The judge did, however, give a self-defense instruction. Even with the defendant's testimony, the decision to give the self-defense instruction is aptly described by the Commonwealth as "generous."

what the victim actually said to the officer about the four month old stabbing.[7] Her hearsay statement about this separate incident was certainly not directly inconsistent with her 911 call as the statements were in *Mahar*. Moreover, as explained above, the defendant was allowed to introduce other evidence, including his own testimony and his own statement to Officer Congdon, regarding the prior stabbing. In these circumstances, we discern no error in the judge's refusal to allow in evidence additional unspecified hearsay from the victim on this separate incident. Compare, e.g., *Commonwealth* v. *Mahar, supra* at 650 (error, albeit harmless, to exclude prior inconsistent statement that directly contradicted nontestifying victim's hearsay statement); *Commonwealth* v. *Moses*, 436 Mass. 598, 602-603 (2002) (error to exclude evidence of prior convictions).[8]

*Judgment affirmed.*

---

[7]Apparently she claimed to be acting in self-defense after being beaten badly.

[8]We note further that the trial transcript contains no information regarding the basis of the objection, the defendant's arguments, or the reasons for the judge's ruling on this issue, as most of the discussion was "inaudible." See *Commonwealth* v. *Woody*, 429 Mass. 95, 98-99 (1999) (appellant bears burden of settling record if there are material gaps or inaudible portions in transcript, and "appellate court may nevertheless decline to consider [appellant's] claims if it determines, in its judgment, that the transcript is not adequate").