## Commonwealth *vs.* Joseph Beatrice.

Plymouth. September 8, 2010. - July 29, 2011.

Present: Ireland, C.J., Spina, Cordy, Botsford, & Gants, JJ.

*Practice, Criminal,* Confrontation of witnesses. *Constitutional Law,* Confrontation of witnesses. *Evidence,* Hearsay, Spontaneous utterance, Testimonial statement.

Complaint received and sworn to in the Brockton Division of the District Court Department on April 20, 2006.

The case was tried before *James F.X. Dinneen,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Kristen Stone,* Assistant District Attorney, for the Commonwealth.

Gants, J. On April 7, 2006, the victim telephoned the Brockton police department's 911 emergency line and told the police operator that her "boy friend," the defendant, had "just beat [her] up." The defendant was charged in the District Court with

two counts of assault and battery in connection with the April 7 incident.[1] After the victim invoked her constitutional rights against self-incrimination, the defendant moved in limine to suppress the tape recording of the telephone call, contending that, without the victim's testimony, the admission of the tape recording would violate his right to confrontation under the Sixth Amendment to the United States Constitution.[2] The judge denied the motion, and over objection, another judge admitted the tape recording in evidence at trial. The defendant was found guilty of one count of assault and battery of the victim, and the defendant appealed. The Appeals Court affirmed the judgment of conviction, concluding that "the victim's 911 call was admissible, as it was an excited utterance and was not testimonial." *Commonwealth* v. *Beatrice*, 75 Mass. App. Ct. 153, 158 (2009).[3] We granted the defendant's application for further appellate review, "limited to issues relating to the April 7, 2006, 911 call." After oral argument, we stayed the appeal pending a decision by the United States Supreme Court in *Michigan* v. *Bryant*, 131 S. Ct. 1143 (2011), which considered a confrontation clause challenge to the admissibility in evidence of hearsay statements made to the police by a homicide victim before he died, and invited the parties to file supplemental memoranda after that case was decided on February 28, 2011. We conclude that the victim's 911 call was an excited utterance and was not testimonial because we can infer from the victim's statements during the call that the victim had just been assaulted, that the victim was still in the same apartment building as the assailant, and that the

---

[1]The defendant also was charged with threatening to commit a crime and intimidation of a witness in connection with this incident, but these charges were dismissed at the request of the prosecution. In addition, the defendant was charged with threatening to commit a crime and assault and battery in connection with another incident on April 12, 2006, involving the same victim. The defendant was found not guilty of these charges.

[2]The Sixth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment to the United States Constitution, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." *Commonwealth* v. *Lao*, 450 Mass. 215, 222 (2007), *S.C, ante* 12 (2011). The defendant has not challenged the admission of the tape recording under art. 12 of the Massachusetts Declaration of Rights, which also protects the right of confrontation.

[3]The Appeals Court also considered and rejected other claims of error. *Commonwealth* v. *Beatrice*, 75 Mass. App. Ct. 153, 158-161 (2009).

victim was in danger until the police came or the defendant fled. Therefore, we affirm.

*Discussion.* Because further appellate review is limited to the admission of the tape recording of the 911 telephone call, and because the judge rested its admission solely on inferences arising from the contents of that call, we turn directly to it.[4] While no transcript of the telephone call was offered in evidence, we have listened to the tape recording and set out the audible portions of the conversation:

> THE 911 OPERATOR: "911 . . . Hi."

> THE CALLER: "I'm using my neighbor's phone. I live at [street address and apartment number]. My boy friend just beat me up. He beat the shit out of me. I need a cruiser."

> THE 911 OPERATOR: "What's his name?"

> THE CALLER: "Joseph Beatrice."

> THE 911 OPERATOR: "Joseph?"

> THE CALLER: "Yup. Joseph Beatrice."

> THE 911 OPERATOR: "Beatrice?"

> THE CALLER: "Yup."

> THE 911 OPERATOR: "Ok. Is he still in your apartment?"

> THE CALLER: "He's still there, he's packing his stuff now."

> THE 911 OPERATOR: "Do you need an ambulance?"

> THE CALLER: "Umm. Please. And I, I need you to send the cops now, before he leaves."

> THE 911 OPERATOR: "Ok. We'll send someone out. Ok?"

> THE CALLER: "Yup."

> THE 911 OPERATOR: "Ok . . . ."

---

[4]The evidence admitted at trial is summarized in the Appeals Court opinion. *Commonwealth* v. *Beatrice, supra* at 154-155.

In *Crawford* v. *Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the confrontation clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." The victim here was unavailable to testify because of her invocation of the right against self-incrimination, and the defendant had no prior opportunity to cross-examine her regarding the incident. Accordingly, her hearsay statements in the tape-recorded telephone call properly are admissible only if they pass two tests. First, the statement must be admissible under our common-law rules of evidence as an exception to the hearsay rule. See *Commonwealth* v. *Simon*, 456 Mass. 280, 295, cert. denied, 131 S. Ct. 181 (2010); *Commonwealth* v. *Nesbitt*, 452 Mass. 236, 243 (2008). Second, the statement must be non-testimonial for purposes of the confrontation clause of the Sixth Amendment. See *Commonwealth* v. *Simon, supra*; *Commonwealth* v. *Nesbitt, supra.*

The Commonwealth argues that admission of the statements on the 911 tape recording was proper because the victim's statements during the telephone call were excited utterances. "A statement will be considered a spontaneous [or excited] utterance 'if (1) there is an occurrence or event "sufficiently startling to render inoperative the normal reflective thought processes of the observer," and (2) if the declarant's statement was "a spontaneous reaction to the occurrence or event and not the result of reflective thought." ' " *Commonwealth* v. *Nesbitt, supra* at 246, quoting *Commonwealth* v. *Santiago*, 437 Mass. 620, 623 (2002). See *Commonwealth* v. *Simon, supra* at 296; Mass. G. Evid. § 803(2) (2011). Both prongs were satisfied in this case.[5] The statements to the police operator were made "in circumstances that reasonably negated premeditation." *Commonwealth*

---

[5]The defendant did not object to the admission of the statements on the ground of hearsay, and neither the motion judge nor the trial judge specifically addressed that point. Implicit in the motion judge's denial of the motion in limine and the trial judge's decision to admit the recordings, however, is the conclusion that the victim's statements during the 911 call qualified as excited utterances. A judge has broad discretion to decide whether a particular statement qualifies as an excited utterance. *Commonwealth* v. *Simon*, 456 Mass. 280, 296, cert. denied, 131 S. Ct. 181 (2010).

v. *Santiago, supra* at 625. The victim's voice on the telephone reflected that she was very upset and breathing heavily, and she reported that she had "just" been assaulted by the defendant and agreed that she needed an ambulance. We conclude that the statements were excited utterances.

Turning to the question whether the statements were testimonial, the Supreme Court declared in *Davis* v. *Washington,* 547 U.S. 813, 822 (2006):

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

Consequently, for a statement to be nontestimonial, there must be an ongoing emergency, and the primary purpose of the interrogation must be to meet that emergency, not to prove past events that may be relevant to criminal investigation or prosecution.[6] Because these are preliminary facts that determine the admissibility of evidence, its proponent, here the prosecution, bears the burden of proving them by a preponderance of the evidence. See *Commonwealth* v. *Purdy,* 459 Mass. 442, 447 (2011); Mass. G. Evid., *supra* at § 104(a) & note, at 10. "We accept the judge's findings of fact unless clearly erroneous but independently apply constitutional principles to the facts found." *Commonwealth* v. *Simon, supra* at 296.

"The existence of an ongoing emergency must be objectively assessed from the perspective of the parties to the interrogation at the time, not with the benefit of hindsight. If the information the parties knew at the time of the encounter would lead a reasonable person to believe that there was an emergency, even

---

[6]While a discussion with a 911 telephone operator is not generally characterized as police interrogation, the United States Supreme Court has included 911 telephone calls within the rubric of "interrogation," regardless of whether the declarant's statements were in response to an operator's questions. See *Davis* v. *Washington,* 547 U.S. 813, 822-823 & n.2 (2006). See *Commonwealth* v. *Nesbitt,* 452 Mass. 236, 246 (2008).

if that belief was later proved incorrect, that is sufficient for purposes of the Confrontation Clause." *Michigan* v. *Bryant, supra* at 1157 n.8.[7] "[W]hether an emergency exists and is ongoing is a highly context-dependent inquiry." *Id.* at 1158. The circumstances may reflect an ongoing emergency where the victim is seriously injured and requires medical assistance, see *id.* at 1159, 1165 (victim bleeding from life-threatening gunshot wound); *Commonwealth* v. *Simon, supra* at 299-300 (same); where the victim's safety is at substantial risk, see *Davis* v. *Washington, supra* at 817 (victim being beaten during 911 call); *Commonwealth* v. *Galicia,* 447 Mass. 737, 745 (2006) (same); where the dispatched police officers responding to the scene may be at risk from an armed assailant, see *Commonwealth* v. *Simon, supra* at 300; or where an armed assailant poses a substantial risk to the public at large. See *Michigan* v. *Bryant, supra* at 1158.

Here, based on the victim's report to the 911 operator, she had "just" been severely beaten by her boy friend and agreed she wanted an ambulance, but there is no suggestion that her injuries were serious or life threatening, that her boy friend was armed with a dangerous weapon, or that her boy friend posed any risk to the public at large. Nor does she suggest that she was being beaten at the time of her telephone call or that her boy friend was presently where she was. In these circumstances, a reasonable person would believe there was an ongoing emergency only if there was a continuing risk to the victim, that is, a substantial risk that her assailant may find her and continue his assault on her before the police arrived on the scene. See *Michigan* v. *Bryant, supra* (in domestic violence cases, Supreme Court "focused only on the threat to the victims and assessed the ongoing emergency from the perspective of whether there was a continuing threat to them").

The motion judge rested his denial of the motion in limine solely on the content of the tape recording of the 911 telephone call, and the trial judge admitted the tape recording in evidence

[7]While the existence of an ongoing emergency is based on the collective knowledge of the parties to the interrogation, in a 911 telephone call, it is generally only the declarant's knowledge that matters, because the police operator is unlikely to know anything that the declarant has not told the operator.

based on the motion judge's ruling, so we similarly limit our examination of the relevant circumstances in determining whether the prosecution met its burden of proving an ongoing emergency. We conclude, based on the tape-recorded call and reasonable inferences from its content, that the judge did not err in finding an ongoing emergency because, objectively, the circumstances reasonably indicated that the victim continued to be at substantial risk at the time of the telephone call.[8]

It is reasonable to infer from the victim's words and her tone that the victim's boy friend had just beaten her severely and that she thought it urgent that the police arrive on the scene "now, before he leaves" her apartment. While it is not precisely clear where the victim was when she was calling, it is reasonable to infer that she was at the apartment of a neighbor in the same apartment building where she lived: she asked both for a police cruiser to stop the defendant before he left her apartment and for an ambulance for her, but she provided the police operator only with her street address and apartment number, not with a separate address where she was then located. This suggests that she wanted the cruiser for him and the ambulance for herself to be dispatched to her home address. Where a woman has "just" been severely beaten by a boy friend in an apparent act of domestic violence, where the woman remains in a neighboring apartment, and where the assailant is "packing his stuff" (suggesting that her assailant had lived with the victim and had just decided to move out), it is reasonable to conclude that the ongoing emergency continues until the police have arrived and secured the scene, or until the assailant has left the scene. See *Davis* v. *Washington*, 547 U.S. 813, 828 (2006) ("emergency appears to have ended" when defendant drove away from premises)[9]; *id.* at 829 (in consolidated case, no ongoing emergency after police arrived at home, heard

---

[8]The motion judge did not make specific findings as to the existence of an ongoing emergency, but we understand this finding to be implicit in his rejection of the defendant's confrontation clause challenge to the admission of this evidence.

[9]In *Michigan* v. *Bryant*, 131 S. Ct. 1143, 1158 (2011), the United States Supreme Court noted that in *Davis* v. *Washington*, *supra* at 829, it had "assumed the correctness of the Washington Supreme Court's holding that admission of [statements made after the assailant had fled] . . . was harmless, without deciding whether those subsequent statements were also made for the primary purpose of resolving an ongoing emergency."

no arguments, and saw no violence); *Commonwealth* v. *Lao,* 450 Mass. 215, 226 (2007), *S.C., ante* 12 (2011) (no ongoing emergency where defendant, after trying to run victim over with vehicle, had dropped victim [from whom he was separated] at her home and left in vehicle). Until then, even if the assailant is not armed, a reasonable person would recognize that an enraged boy friend might demand or even force entry into a neighbor's apartment, or lie in wait until the victim leaves the neighbor's apartment, in an attempt to do her further harm. Because of this danger, we would expect the police to treat it as an emergency, and not delay in sending a police cruiser to the address. Until the threat had been dispelled by the arrival of the police or the departure of the defendant, the emergency was ongoing.

In evaluating whether the primary purpose of the interrogation was to meet that ongoing emergency, rather than to prove past events that may be relevant to criminal prosecution or investigation, our inquiry is objective; "the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Michigan* v. *Bryant, supra* at 1156. While a reasonable person responding to an ongoing emergency would first ask questions designed to address the emergency, " 'a conversation which begins as an interrogation to determine the need for emergency assistance' can 'evolve into testimonial statements.' " *Id.* at 1159, quoting *Davis* v. *Washington, supra* at 828. The Supreme Court has recognized that, in domestic disputes, "[o]fficers called to investigate . . . need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim," so such "initial inquiries" often produce nontestimonial statements. *Davis* v. *Washington, supra* at 832, quoting *Hiibel* v. *Sixth Judicial Dist. Court of Nev.,* 542 U.S. 177, 186 (2004). Where a 911 call is "a call for help against a bona fide physical threat" or provides "information enabling officers immediately to end a threatening situation," rather than "a narrative report of a crime absent any imminent danger," the primary purpose of the call is to meet an ongoing emergency. *Davis* v. *Washington, supra* at 827, 832.

To determine whether the primary purpose of an interrogation is to meet an ongoing emergency, we focus on:

> "(1) whether the 911 caller was speaking about 'events *as they were actually happening* rather than describ[ing] past events'; (2) whether any reasonable listener would recognize that the caller was facing an 'ongoing emergency'; (3) whether what was asked and answered was, viewed objectively, 'necessary to be able to *resolve* the present emergency, rather than simply to learn . . . what had happened in the past,' including whether it was necessary for the dispatcher to know the identity of the alleged perpetrator; and (4) the 'level of formality' of the interview (emphasis in original)."

*Commonwealth* v. *Galicia*, 447 Mass. 737, 743-744 (2006), quoting *Davis* v. *Washington, supra* at 827. All of these factors support the conclusion that the primary purpose of the interrogation during the 911 call in this case was to meet an ongoing emergency rather than to prove past events to enable criminal prosecution or investigation. As described by the victim, all the events were actually happening at the time of the call ("he's packing his stuff now") or had just happened ("my boy friend just beat me up"). A "reasonable listener" would recognize that the caller faced an ongoing emergency, and the listener (the 911 operator) asked only questions that were necessary to address the emergency. The operator asked for the assailant's name so that the responding officers could identify the person who had just beaten the victim and for his present location ("Is he still in your apartment?") so they could find him, and also asked if the victim needed an ambulance to ensure that the caller received appropriate medical assistance. The caller was not asked to provide, and did not volunteer, any specific details as to what had happened in the past. The interview was informal and very brief, which was consistent with an interview whose purpose was to respond to an emergency rather than to develop a case for prosecution. See *Michigan* v. *Bryant*, 131 S. Ct. 1143, 1160 (2011), quoting *Davis* v. *Washington*, 547 U.S. 813, 822 (2006) ("formality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the interrogation is to 'establish or prove past events potentially relevant to later criminal prosecution,' " but "informality does not necessarily

indicate the presence of an emergency or the lack of testimonial intent").

*Conclusion.* The 911 telephone call was not testimonial because the primary purpose of the interrogation was to meet an ongoing emergency, rather than to prove past events to develop a case for criminal prosecution. The judge, therefore, did not err in admitting the tape recording of the telephone call in evidence.

*Judgment affirmed.*