The defendant was convicted after a bench trial of assault and battery on a family or household member and violating an abuse prevention order. The sole issue on appeal is whether the judge erred in admitting out-of-court statements made by the victim to a testifying officer. We affirm.
On February 2, 2017, two Lowell police officers responded to an apartment after a report of an ongoing domestic incident. The incident was between the defendant and his girl friend, the victim. When the two responding officers arrived, the victim's son directed them to the second-floor apartment. As they climbed the stairs, the officers heard a male and female "screaming" at each other inside the apartment, and upon entry of the apartment they noticed blood on the walls. The officers found the victim in the living room, "borderline hysterical[,] ... crying[,] and holding the right side of her face," while "trying to form words." One of the officers, Officer Jason Gatto, asked the victim, "What happened? What's going on? Why is there blood everywhere?" The victim responded that the defendant had grabbed her by the hair and punched her in the face, and that she had stabbed him with a pocket knife to escape from him. While Gatto was speaking with the victim, the officers saw more blood in the kitchen, which was "in complete disarray," and could hear the defendant in the "back" of the apartment. The officers then called for backup and an ambulance because they "didn't know what [they] had at that point." Once backup arrived, officers apprehended the defendant, who was in a bedroom and bleeding from the arm. At that point, according to Gatto, the "scene was made safe and secure" because the officers had identified everyone in the apartment and no one was armed. Upon receiving medical treatment, the victim spoke to Gatto again and stated that the altercation started in the back bedroom area, that the defendant pulled her up by the hair and punched her in the face, and that she stabbed him with a pocket knife she kept under her pillow. She also stated that the defendant chased her from the bedroom into the kitchen area, where another struggle began, and she stabbed him a second time.
The Commonwealth filed a motion in limine to admit the statements made by the victim to police at the apartment. The defendant objected and filed a motion to exclude the statements, arguing in part that the statements were testimonial. The judge reserved judgment on the motions until Gatto testified. Over the defendant's renewed objection, the judge allowed Gatto to testify to the victim's initial statements that the defendant had grabbed her by the hair and punched her in the face as nontestimonial spontaneous utterances. He excluded the second set of statements the victim made to Gatto "later on after everything calmed down." On appeal, the defendant argues that the admission of the initial statements, which were testimonial, violated his right to confrontation and was therefore erroneously admitted.
Since the defendant's objection at trial preserved this issue for appeal, we review for prejudicial error. See Commonwealth v. Gomes, 475 Mass. 775, 787 (2016). "A statement is '[a] spontaneous utterance if (A) there is an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of the observer, and (B) the declarant's statement was a spontaneous reaction to the occurrence or event and not the result of reflective thought.' " Commonwealth v. Barbosa, 477 Mass. 658, 672 (2017), quoting Mass. G. Evid. § 803(2) (2017). "[S]tatements admissible as spontaneous utterances must also satisfy the confrontation clause of the Sixth Amendment to the United States Constitution, [which] bars the admission of testimonial out-of-court statements by a witness who does not appear at trial unless the witness is unavailable to testify and the defendant had an earlier opportunity for cross-examination." Commonwealth v. Imbert, 479 Mass. 575, 580 (2018), quoting Commonwealth v. Mulgrave, 472 Mass. 170, 180 (2015).
The defendant asserts that the statements made by the victim to Gatto were "made when there was no emergency" and were "procured with the primary purpose of being used ... for trial testimony." The statements, he argues, were therefore testimonial in nature and cannot be admitted without violating the confrontation clause.
Factors that help distinguish testimonial statements from nontestimonial statements include:
"(1) whether the [declarant] was talking about 'events as they were actually happening rather than describ[ing] past events'; (2) whether any reasonable listener would recognize that the [declarant] was facing an 'ongoing emergency'; (3) whether what was asked and answered was, viewed objectively, 'necessary to be able to resolve the present emergency, rather than simply to learn ... what had happened in the past,' including whether it was necessary for [police] to know the identity of the alleged perpetrator; and (4) the 'level of formality' of the interview (emphasis in original)."
Commonwealth v. Galicia, 447 Mass. 737, 743 (2006), quoting Davis v. Washington, 547 U.S. 813, 827 (2006). While statements made in response to police questioning are often considered testimonial, such statements are nontestimonial where, when objectively assessed from the perspective of the parties at the time, there is an "ongoing emergency[ ] and the primary purpose of the interrogation [is] to meet that emergency, not to prove past events that may be relevant to criminal investigation or prosecution." Commonwealth v. Beatrice, 460 Mass. 255, 259 (2011).
The parameters of an ongoing emergency may depend on the "type and scope of danger posed to the victim, the police, and the public." Commonwealth v. Middlemiss, 465 Mass. 627, 634 (2013), quoting Michigan v. Bryant, 562 U.S. 344, 371 (2011). The duration of an ongoing emergency has no "concrete physical or temporal limits," and, because of the context-dependent nature of the determination, it is a finding "properly left to the trial courts." Middlemiss, supra at 635. The Davis Court acknowledged that a police officer's initial approach in domestic disputes "may often" produce nontestimonial statements because of the officer's need to assess the situation and any threat to responders, the victim, and the public at large. Davis, supra at 832. See Beatrice, supra at 262.
Here, the clear purpose of the initial questioning was to respond to an ongoing emergency. As the two police officers climbed the stairs to the apartment, they had only limited knowledge of an ongoing domestic dispute. Both officers could hear a male and female screaming at each other. After entering the apartment, they saw blood on the walls and in the kitchen, which was "in complete disarray." The victim, described by Gatto as "borderline hysterical," was sitting in the living room and was struggling to speak. The defendant's location, condition, and threat level were all unknown. A reasonable person, viewing the scene, could conclude that there was an ongoing emergency at that time. Gatto's questions for the victim were concerned with settling the situation at hand, not investigating past events, and the victim's answers were necessary for the police to respond appropriately. Notably, the judge properly excluded the victim's later statements made after the immediate crisis had passed.
In sum, the victim's initial statements given to an officer in the course of an ongoing emergency were nontestimonial. As a result, the judge's admission of those statements was not in error.
Judgments affirmed.